ROBERT M. BILDER AND SALLY L. BILDER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71548. Filed October 26, 1959.

*Martin D. Cohen, Esq.,* for the petitioners.
*Chapman H. Belew, Esq.,* for the respondent.

WITHEY, *Judge:* For the years 1954 and 1955 the Commissioner determined deficiencies in the income tax reported by petitioners in the respective amounts of $450 and $281.90. By amended answer, respondent claims increased deficiencies in the respective amounts of $75.76 and $84.90. The issues for decision are (1) whether rental paid for a Florida apartment is a deductible medical expense and (2) whether transportation expense to Florida is a proper medical expense deduction.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioners are husband and wife who reside in Mountainside, New Jersey, and filed their joint income tax returns for 1954 and 1955 with the district director of internal revenue at Newark, New Jersey. Hereinafter, unless otherwise indicated, petitioner has reference to the husband, Robert M. Bilder.

Petitioner was born March 14, 1911. He is a member of a Newark law firm. Since the age of 35 he has suffered four heart attacks each resulting in a myocardial infarction. That term means that

muscular tissue of the heart has become necrotic due to a lack of sufficient blood circulation. The failure of blood to circulate through petitioner's heart muscle tissue was in each instance the result of a coronary occlusion. That term means a closing or narrowing of an artery feeding blood to the heart tissue to such an extent that insufficient or no blood may pass to such tissue to nourish it. In petitioner's case, as is true generally, upon the occurrence of each such event other blood vessels already in existence and newly developed vessels gradually took over the burden of providing the blood supply for that portion of his heart muscle which remained alive and still functioning after each attack. Accepted as proper treatment by eminent heart specialists, at least in the United States, is the advice to such patients as petitioner that, if they live in a cold climate, they are to remain indoors or hospitalized during the winter months or, in the alternative, spend the winter months in a warm climate. The latter alternative advice was given petitioner by one of the most eminent heart specialists in the United States if not the world. This advice was given him because of his personality characteristics. He is and was at the time the advice was given a hyperkinetic person with an unusual inner stress and tension. To confine him either at home or a hospital in the relatively cold climate of New Jersey throughout the winter months would have resulted in danger to his health from two sources. Such extended inactivity would have increased his inner stress and tension, which are medically accepted as tending to cause the recurrence of heart attacks in one who has previously suffered one or more such incidents. Mild exercise of the type not available while confined to home or hospital is required for such a person and was for petitioner in order that new vascular passages for blood to the heart may more readily and quickly develop.

Subsequent to such advice, petitioner, his wife, and child traveled from their home in New Jersey to Fort Lauderdale, Florida, in December of 1953. From January 1, 1954, to March 24, 1954, they lived there in a rented apartment paying a total rent for the period of $1,500. Petitioner chose Fort Lauderdale and the apartment for the following reasons:

The specific disease from which petitioner suffers is atherosclerosis. The objective of the medical treatment accorded him was therefore the prevention of the clotting of his blood and the prescribing of Dicumerol, an anticoagulant drug, to that end. The objective of the advice given him as part of the treatment of his disease, concerning his conduct of his way of life, was that he should live under such conditions that he could obtain the proper exercise to the end that he might develop sufficient coronary blood vessel capacity to properly nourish what remains of his heart mus-

cle tissue. The primary objective of all his treatment and the advice given incidental thereto was the prevention of any further myocardial infarction with resulting impairment or destruction of the functioning of his heart, thus prolonging his life. Fort Lauderdale climate accords with this advice. Dicumerol, in 1953, was not widely used in the treatment of heart disease and relatively few doctors were competent to use it for that purpose. Because the drug prevents the natural tendency of human blood to clot, its use is attended by grave danger of hemorrhage unless doctors and hospitals competent to control the dosage and measure the level of the drug in the blood of the patient are readily available. One of the few doctors in Florida then competent to supervise petitioner's use of the drug was in Fort Lauderdale. Petitioner's apartment was in close proximity to one of the few hospitals then able to test petitioner's blood to determine the correct dosage of Dicumerol. Petitioner has resided in Fort Lauderdale during the winter months each year since 1953 and has been under the care of the same doctor during those months of each year. The doctor examines petitioner at least weekly and upon occasion oftener when required in order to maintain the proper percentage of Dicumerol in his blood.

On December 15, 1954, petitioner and his family again returned to Fort Lauderdale and until February 10, 1955, lived in the same apartment at a rental for the period of $829. On the latter date petitioner and his family moved to a house he had purchased in that city. On April 15, 1955, they returned to Newark where petitioner resumed his law practice.

While in Florida during 1954 and 1955 petitioner taught school at a salary of $50 per week. During such periods, by agreement with other members of his Newark law firm, although he continued to share in its profits, petitioner forfeited a $150 weekly drawing account therefrom. The move to Florida each winter for such an extended period with its attendant disruption of petitioner's Newark household and the necessity that their daughter be taken from one school and placed in another constituted a burden upon the family. Their sojourns in Fort Lauderdale during the years at issue were not vacations; they were taken as a medical necessity and as a primary part of necessary medical treatment of a disease from which petitioner was and still is suffering.

It is stipulated and found that the cost of petitioner's individual transportation from Fort Lauderdale to Newark and from Newark to Fort Lauderdale during 1954 was $250 and that the same cost was incurred by him during 1955 for like trips. On his income tax returns for the years at issue he deducted as "medical care" expenses both the rentals paid for the Florida apartment and $250

each year for transportation between Newark and Fort Lauderdale. Respondent has disallowed such deductions.

The necessary expenses of $500 and $277 for 1954 and 1955, respectively, for the individual housing of the petitioner in Fort Lauderdale and the transportation expenses of $250 of petitioner between Fort Lauderdale and Newark for each of the years at issue were incurred or paid by him for the mitigation and treatment of myocardial infarction, for the prevention of further such heart damage as a result of atherosclerosis from which he suffered during those years, and for the purpose of maintaining the proper function of his heart and constitute expenses incurred by petitioner for medical care and treatment.

OPINION.

If deductible, the deductions here involved are allowable under section 213 of the Internal Revenue Code of 1954, applicable portions of which are in the margin.[1] With the exception of its reference to the deductibility of transportation expense, the section is virtually identical with and expresses the same congressional intent as did section 23(x) of the Internal Revenue Code of 1939. *Frank S. Delp*, 30 T.C. 1230.

Respondent in effect argues that we wrongly decided the *Delp* case, because the congressional history, he contends, requires an opposite conclusion. In view of the clarity of the wording of section 213 of the 1954 Code, we see no reason to resort to congressional history for its meaning. We see no reason therefore to change the position we took with respect to its meaning as expressed in that case.

We have found as fact the factors which must control our ultimate decision of this case. The general criteria to be considered in resolution of this issue under section 23(x) of the 1939 Code were set forth in *Edward A. Havey*, 12 T.C. 409, and *L. Keever Stringham*, 12 T.C. 580, affd. 183 F. 2d 579 (C.A. 6, 1950). They are as follows: (1) What was the purpose of the taxpayer in making the expenditures sought to be taken as a medical expense deduction? (2) Would the expenditure have been made but for the advice of

---

[1] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152)—

    &#42;      &#42;      &#42;      &#42;      &#42;      &#42;      &#42;

(e) DEFINITIONS.—For purposes of this section—

  (1) The term "medical care" means amounts paid—

    (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

    (B) for transportation primarily for and essential to medical care referred to in subparagraph (A).

a physician? (3) Did the expenditure have direct relationship to the treatment of a specific disease? (4) Was the treatment reasonably designed to effect the diagnosis, cure, mitigation, or prevention of a specific disease or to affect any structure or function of the body? Because Congress has left virtually unchanged in section 213 of the 1954 Code the language it used in section 23(x) of the 1939 Code and because the last two cited cases long predate enactment of the 1954 Code, we use the same criteria for our decision here.

This record clearly supports a conclusion that the primary and only purpose for the housing and transportation expenses of petitioner here involved which were incurred by him was that he might so conduct his life, after four heart attacks with their resulting myocardial infarction, that he could develop sufficient additional blood vessel capacity to properly nourish and keep functioning such remaining heart muscle tissue as he still possessed while at the same time he might be so located as to have available proper medical supervision and hospital facilities that he might continue to maintain a safe blood level of the anticoagulant drug Dicumerol. The drug was taken because it tended to prevent the clotting of the blood passing through and into his heart. Its use was necessary because the specific disease from which petitioner suffered (atherosclerosis) causes a narrowing of the arteries leading to the heart, thus making it difficult or impossible for a blood clot to pass through them.

Would these expenditures have been made but for the advice of a physician? We think not. Petitioner's repeated heart attacks with their convalescent periods seriously impaired his ability to earn a living at the law. During the period of their occurrence he was (against certain medical advice) attempting to reestablish an active law practice in Newark after several years' absence while serving in the Armed Forces of the United States. He had a wife and school-age daughter who were living with him in Newark in a dwelling owned by them. Removing the daughter from school and enrolling her in another twice each year was to say the least undesirable. The disruption of their household for a period of about 4 months each year was distasteful to petitioner's wife. He was under the continuous care of a physician while in Florida and for the years at issue worked at teaching while there. His choice of State, city, and dwelling therein was we think dictated entirely by the advice of eminent medical authority. We have therefore found as a fact that his sojourns in Florida during the years involved were not vacations. It reasonably follows that his housing and transportation expenses would not have been incurred but for the advice of his physician.

We have adequately discussed above the relationship of petitioner's living during the winter months in Florida and his use of an anticoagulant drug with its hoped for mitigation of the effects of his prior heart attacks and the prevention of further such incidents. It is undisputed that since the beginning of such treatment he has experienced no further attacks. We find the treatment was designed to and did accomplish those ends.

Although respondent argues that the treatment here was not sufficiently proximate to the onset or recurrence of the disease from which petitioner suffers as to bear a relationship thereto, we think that argument falls of its own weight when it is considered that petitioner has, since sometime prior to his first attack, *always* suffered from atherosclerosis. Since the disease is not so symptomatic as to be brought to the awareness of an otherwise well layman, petitioner could not reasonably have known of its existence in his body prior to his first heart attack and, since he has suffered from it at least since the first attack, there have been no recurrences. Under the instant facts we do not think this is an apt test of the deductibility of the expenses here involved.

Although we find that petitioner's individual living and traveling expenses while in Fort Lauderdale during the years at issue were properly deductible medical expenses under section 213 of the 1954 Code, the petitioner seeks deduction of the rentals paid for an apartment wherein not only he but his wife and child were housed. That portion thereof which represents the cost of housing his wife and child are nondeductible personal living expenses which we find must be eliminated from the total rentals paid. Inasmuch as petitioner seeks to deduct only his individual traveling expense, it appears to be inconsistent that he seeks to deduct the total rentals. The record indicates that the cost of a hotel room for petitioner alone during his stays in Florida during the years at issue would have exceeded the total rentals for the apartment in which he and his family lived, but it does not show the rental for his single occupancy of the apartment or other reasonably suitable living accommodations nor is it argued or shown that in the absence of his family petitioner would have necessarily occupied a hotel room. From the record we are unable to conclude that having his family in Florida with him was necessary as a part of the treatment of his disease. Under *Cohan* v. *Commissioner*, 39 F. 2d 540, we find that the proportion of the rentals deductible as the individual medical expense of petitioner was $500 for 1954 and $277 for 1955.

*Decision will be entered under Rule 50.*