*Decisions will be entered accordingly.*

MORRIS C. MONTGOMERY AND FRANCES W. MONTGOMERY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6434-66.    Filed December 17, 1968.

*William R. Bagby*, for the petitioners.
*W. Gerald Thornton*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioners' income tax of $210.41 and $192.35 for the years 1961 and 1962, respectively.

After certain concessions by respondent, the remaining issues for 1961 are whether petitioners may deduct, under section 213,[1] the cost of meals and lodging incurred during the course of trips undertaken for the purpose of obtaining medical treatment for Frances Montgomery at the point of destination, the amount of the deductible automobile expense incurred during such trips, and the deductibility of costs of pajamas and of a part-time household worker. The sole issue with respect to 1962 is whether the cost of a trip to California in connection with settling an estate is deductible under section 212.

---

[1] Unless otherwise stated, all references are to the Internal Revenue Code of 1954, as amended.

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioners are husband and wife who had their legal residence in Lawrenceburg, Ky., at the time of the filing of the petition herein. The petitioners filed joint Federal income tax returns for the taxable years 1961 and 1962 with the district director of internal revenue, Louisville, Ky.

The petitioners made a round trip by car to the Mayo Clinic, Rochester, Minn., between August 26 and 31, 1961, so that each could receive a medical examination. The examination of Frances Montgomery revealed the need for surgery on both feet. On or about October 3, Frances traveled alone by train and bus to Rochester for the operation. From October 3 to 20, 1961, she was hospitalized for surgery and recovery at the Mayo Clinic. After the operation, Frances' feet and legs were placed in casts to her knees. Morris Montgomery traveled to Rochester by car after the operation to accompany his wife on her return to Lawrenceburg. Thereafter, she convalesced at home for a period of 5 weeks. On or about November 28, she flew to Rochester and was again hospitalized at the Mayo Clinic until December 14, 1961, for the removal of the casts and further treatment. At the time of her second discharge from the hospital, Morris Montgomery again traveled by car to bring her home. Petitioners' total expense for meals and lodging during the various trips between Lawrenceburg and Rochester was $162.39.

Petitioners traveled 5,380 miles by car for medical treatment during the taxable year 1961 and deducted $538 as medical expenses, computed at the rate of 10 cents per mile. During that year, they operated two automobiles—a 1957 Ford, used exclusively for business purposes, and a 1960 Ford Thunderbird, used for the medical transportation as well as personal purposes. The cost of operating the 1957 Ford was 9.61 cents per mile including depreciation and 5.57 cents per mile excluding depreciation. The cost of operating the Ford Thunderbird for medical purposes during 1961 was 5 cents per mile.

Because she could only move about in a wheelchair or on crutches after the operation, a cleaning woman, Ollie McKee, was employed at a cost of $30 to assist in the care and nursing of Frances Montgomery and to aid the Montgomery household during the period of convalescence. Frances Montgomery purchased two pairs of regular pajamas at a cost of $14.42 to wear to therapy sessions at the Mayo Clinic.

Margaret W. Edwards, petitioner Frances Montgomery's aunt, died in California on March 27, 1962. Upon learning of the death, petitioners made a round trip to California, spending 6 days in transit and 3 days in California. The cost of this trip was $759.

Margaret W. Edwards left a will which had been drawn by petitioner Morris Montgomery. Aside from certain specific bequests, her estate of $64,894.75 was left in a trust, which provided for a fixed monthly payment of $150 to her step-daughter, Catherine Ogden, for life with a right in the trustee to encroach upon principal in case the income was inadequate to meet the montly payments, medical expenses, or other need or emergency, with the remainder to Frances Montgomery, if she survived Catherine Odgen. The will named Arthur L. Holt of California as sole executor and trustee. Morris Montgomery had loaned Margaret Edwards about $900 during the last years of her life, because she lacked adequate cash at times when she was in the hospital.

## OPINION

The principal legal issue with respect to the medical expenses may readily be stated: Are petitioners entitled to deduct the cost of meals and lodging during travel between Lawrenceburg, Ky., and Rochester, Minn., conceded by respondent to have been undertaken for bona fide medical reasons? The answer depends upon the construction of section 213(e)(1),[2] and particularly section 213(e)(1)(B), which allows the deduction of "transportation primarily for and essential to medical care." We have found no other decision which deals with this precise question.[3]

Our path is illuminated by the prior judicial history of section 23(x) of the Internal Revenue Code of 1939 (the predecessor of section 213) and of the impact thereon of section 213(e)(1)(B) after its enactment as part of the Internal Revenue Code of 1954. First, it is clear that no distinction should be drawn between the meals and

---

[2] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

.(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * *

* * * * * * *

(e) DEFINITIONS.—For purposes of this section—

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *, or

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A).

[3] In *Lawrence Prem,* T.C. Memo. 1962–157, respondent apparently did not contest the deduction of the meals and lodging of the person traveling for medical reasons. In *Stanley D. Winderman,* 32 T.C. 1197 (1959), the taxpayer was allowed subsistence expenses for the taxable years 1952 and 1953 but did not claim such expenses for 1954, the first year to which section 213(e)(1)(B) was applicable. In *Leo R. Cohn,* 38 T.C. 387 (1962), it appears that some costs beyond actual fare were included in the so-called transportation expense allowed for 1954 but the Court did not indicate that any separate consideration was given thereto. In *Robert M. Bilder,* 33 T.C. 155 (1959), the taxpayer was allowed to deduct "transportation" expense between New Jersey and Florida and respondent acquiesced in that part of the decision (1960–1 C.B. 4) ; it does not appear whether this amount included anything for meals and lodging en route.

lodging of the patient and those of her husband. His trips were required for medical reasons and, indeed, respondent does not contend otherwise. *Leo R. Cohn*, 38 T.C. 387 (1962) ; *Max Carasso*, 34 T.C. 1139 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961) ; I.T. 3786, 1946–1 C.B. 75. Second, under the 1939 Code, the expenditures for meals and lodging herein would have been deductible as medical expenses. *L. Keever Stringham*, 12 T.C. 580 (1949), affirmed per curiam 183 F. 2d 579 (C.A. 6, 1950) ; I.T. 3786, *supra;* Rev. Rul. 55–261, 1955–1 C.B. 307. Third, the language of section 213(e)(1)(B) is not so clear as to preclude resort to legislative history in order to determine the extent to which it operates as a limitation on otherwise deductible medical expenses. *Commissioner* v. *Bilder*, 369 U.S. 499 (1962), reversing 289 F. 2d 291 (C.A. 3, 1961) and 33 T.C. 155 (1959).

Section 213(e)(1) of the Internal Revenue Code of 1954 broadened the definition of "medical care" previously contained in section 23(x) of the Internal Revenue Code of 1939 to include amounts paid for accident and health insurance and also added a provision dealing with amounts paid for transportation. The House and Senate reports dealing with section 213(e)(1) contain substantially the same language:

A new definition of "medical expenses" is provided which incorporates regulations under present law and also provides for the deduction of transportation expenses for *travel prescribed for health, but not the ordinary living expenses incurred during such a trip.* [H. Rept. No. 1337, 83d Cong., 2d Sess., p. 30 (1954).[4] Emphasis added.]

The emphasis on "transportation expense for travel prescribed for health" indicates that Congress was concerned with the taxpayer who elects or is advised to travel to a more favorable climate in order to cure or alleviate the symptoms of disease—what might be described as resort area medication. Further examination of the House and Senate reports confirm this reading:

The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that it specifically excludes deduction of *any meals and lodging while away from home receiving medical treatment.* For example, if a doctor *prescribes* that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible, *but not his living expenses while there. * * * The subsection is not intended otherwise to change the existing definition of medical care,* to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as

---

[4] The Senate committee report uses the identical language except for using the word "allows" in place of "incorporates regulations under present law and also provides for" and adding "only" before "transportation." S. Rept. No. 1622, 83d Cong., 2d Sess., p. 35 (1954).

part of a hospital bill.[5] [H. Rept. No. 1337, *supra*, p. A60; S. Rept. No. 1622, *supra*, pp. 219–200. Emphasis added.]

Thus, the focus of Congress was on meals and lodging of the taxpayer during the period of travel (often protracted) which itself was to produce therapeutic benefits. It did not consider, nor was its attention called to, the problem of the cost of "in transit" meals and lodging incurred while traveling to the point where the prescribed medical treatment or health benefits were to be received. Finally, Congress specified that its purpose was "not * * * otherwise to change the existing definition of medical care." Such an approval reflects the essentially liberal attitude of the Congress toward the deductibility of medical expenses stated when section 23(x) was first incorporated in the Internal Revenue Code of 1939. S. Rept. No. 1631, 77th Cong., 2d Sess., p. 6 (1942). Under the foregoing circumstances and keeping in mind that section 213(e) (1) (B) is a limitation on otherwise deductible medical expenses, we see no reason not to consider "transportation" as meaning the *costs required to bring the patient to the critical point.*

We do not consider that either *Commissioner* v. *Bilder*, *supra*, or *W. B. Counts*, 42 T.C. 755 (1964), precludes us from adopting this point of view, although admittedly there is some language in both opinions which could be so construed. Neither case involved the instant problem and both opinions emphasized that they were dealing with situations involving meals and lodging which had been explicitly dealt with by the Congress. Nor are we impressed with respondent's argument that the use of the word "transportation" instead of "travel" requires a narrower construction. The fact is that the use of the word "travel" would have been ridiculous, for it would have negated the very result sought by the legislation, since travel had been construed to cover meals and lodging during periods of stay at places where the medical treatment occurred. Similarly, we do not share respondent's concern that our construction will open the door to trips to obtain medical treatment by roundabout routes with stopovers at resort facilities. We are not bereft of talent to deal with such situations as they arise and to sift out those expenses which are not *required to bring the patient to the place of medication.*

Petitioner's travel was admittedly for the purpose of obtaining medical treatment. It was in no way prescribed for the health benefits

---

[5] The substance of the committee reports has been embodied in the Treasury regulations interpreting sec. 213 (sec. 1.213–1(e)(iv)) :

Expenses paid for transportation primarily for and essential to the rendition of the medical care are expenses paid for medical care. However, an amount allowable as a deduction for "transportation primarily for and essential to medical care" shall not include the cost of any meals and lodging *while away from home receiving medical treatment.* * * * [Emphasis added.]

to be derived directly therefrom such as a stay in a resort area or a cruise. Under these circumstances and solely with respect to the applicability of section 213, we hold that the word "transportation" includes the cost of petitioners' meals and lodging incurred on the trips between Lawrenceburg and Rochester.

The parties have stipulated that the petitioners drove a Thunderbird 5,380 miles for medical purposes in 1961. Petitioners included 10 cents a mile in their medical deduction, whereas the respondent has allowed only 5 cents per mile. Section 213(a) limits the medical deduction to "expenses paid," which has been held to exclude any amount for depreciation. *Maurice S. Gordon,* 37 T.C. 986 (1962). Petitioners acknowledge that the 10 cents per mile included an allowance for depreciation. There was some testimony that running the Thunderbird was somewhat more expensive than the 1957 Ford, which cost 5.57 cents per mile exclusive of depreciation. Petitioners, however, kept accurate records on the 1957 Ford as contrasted with a complete lack thereof as concerns the Thunderbird. Under the circumstances, we cannot say that petitioners have met their burden of proof. Accordingly, we hold that the 5 cents per mile allowed by respondent was proper. See Rev. Proc. 64–15, 1964–1 C.B. (Part 1) 676.

Petitioners employed Ollie McKee two mornings a week while Frances Montgomery was home with casts on her legs and feet. Respondent has conceded that wages attributable to services rendered directly to her, which are of a type that would be rendered by a nurse, are a deductible medical expense and on brief allocated one-third of the $30 paid as an allowable deduction. Petitioners estimated that between one-third and one-half of Ollie McKee's time was spent serving Frances Montgomery. In the absence of more specific evidence as to the various services performed and the portion of time involved, we are constrained to hold that petitioners have not met their burden of proof beyond the $10 conceded by respondent. *McVicker* v. *United States,* 194 F. Supp. 607 (S.D. Cal. 1961) ; see Rev. Rul. 58–339, 1958–2 C.B. 106.

Petitioners also deducted the cost of two pairs of ordinary pajamas purchased for Frances Montgomery to wear to therapy treatment following the removal of the casts. On the record before us, we cannot say that these items were adapted only for use during such treatment. Consequently, the expense was not an amount paid for the "diagnosis, cure, mitigation, treatment, or prevention of disease" as those terms are used in section 213(e)(1)(A). See Rev. Rul. 55–261, 1955–1 C.B. 307. Respondent's disallowance is sustained.

Petitioners contend that the expense of traveling to California after

416

the death of Margaret Edwards is deductible under section 212.[6] They seek to justify this position on the ground that Frances Montgomery had an interest in the corpus of the trust established by Margaret's will, that there was a justifiable concern that the trust corpus would be mismanaged because of the alleged incompetence of Margaret's stepdaughter, Catherine Ogden, to handle her financial affairs, and that it was therefore necessary to journey to California to attend to Margaret's estate. We disagree.

We do not think the expenses met the "ordinary and necessary" requirement of section 212. There was a named executor-trustee under the will who had the responsibilities of probating the will, selecting an attorney, and collecting, converting, and distributing the assets of the estate. There was no evidence that he was not qualified to perform these duties. Petitioners were nothing more than "volunteers" with respect to the tasks in which they involved themselves with respect to the estate. The motivating force for the trip to California was wholly "personal" in nature, stemming from the desire to comfort and care for a grieving relative.

Under these circumstances, the relationship between the expenses and petitioners' interest in the Edwards estate is too remote to justify a deduction under section 212. Cf. *Mary E. Burrow Trust*, 39 T.C. 1080 (1963), affd. 333 F. 2d 66 (C.A. 10, 1964); *Alex H. Washburn*, 33 T.C. 1003 (1960), affd. 283 F. 2d 839 (C.A. 8, 1960).

Moreover, by virtue of the requirement that Frances Montgomery survive the life tenant, Catherine Ogden, and the broad circumstances under which the corpus could be invaded for the benefit of Catherine, there was no assurance that Frances would in fact come into the possession of any assets. Nor do we have evidence as to the respective ages or health of the life tenant and the remainderman herein, which might have indicated circumstances supporting a conclusion that a portion of the trust would be practically certain to pass to the latter. Consequently, it is doubtful that Frances Montgomery possessed an interest "held for the production of income" as that term is used in section 212. *Graves v. United States*, 239 F. Supp. 260 (E.D. Ky. 1965); *First Nat. Bank of Kansas City v. Nee*, 190 F. 2d 61 (C.A. 8, 1951).[7] Petitioners' reliance on *Hobart J. Hendrick*, 35 T.C. 1223 (1961), and *Frederick E. Rowe*, 24 T.C. 382 (1955), acq. 1955-2 C.B. 8, is misplaced, since in

---

[6] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

    (1) for the production or collection of income;

    (2) for the management, conservation, or maintenance of property held for the production of income; * * *

[7] See also *Fred W. Fairman, Jr.*, T.C. Memo. 1964-229.

both those cases the remainder interests were vested and there was a certainty that a portion of the assets would eventually pass to the taxpayer or his estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DAWSON, *J.*, dissenting in part: With the firm belief that the majority is running the hazardous risk of getting its rudder snagged on the "reef of judicial legislation," I respectfully disagree with the holding that petitioners are entitled to deduct the cost of meals and lodging en route between their home in Lawrenceburg, Ky., and Rochester, Minn., where Mrs. Montgomery received medical treatment.

In my judgment the majority's analysis has encrusted a strained and unwarranted interpretation on the phrase "transportation primarily for and essential to medical care," as used in section 213(e)(1)(B) of the Code, the Treasury regulations, and the legislative history pertinent thereto.

I think Congress knew exactly what it was doing when it enacted section 213(e)(1)(B) of the Internal Revenue Code of 1954 and used the explicit word "transportation" instead of "travel," which historically has been used in successive revenue acts to include meals and lodging. See, e.g., sections 62(2)(B), 162(a)(2), 217(b)(1)(B), and 274(d)(1), where "traveling" expenses specifically include the cost of meals and lodging. Under the provisions of the Internal Revenue Code of 1939 the cost of meals and lodging was held to be a deductible medical expense. *L. Keever Stringham,* 12 T.C. 580 (1949), affirmed per curiam 183 F. 2d 579 (C.A. 6, 1950). With the prior law in mind, and when the proposed new legislation was being considered by the Senate Finance Committee, Under Secretary of the Treasury Folsom advised the committee that the new definition of medical care was intended to "permit deduction of cost of transportation necessary for health but not ordinary living expenses incurred during trip." See Hearings before Senate Finance Committee on H.R. 8300, 83d Cong., 2d Sess., Part 1, p. 103. He added that it was one of the principal amendatory provisions. Thus, the intention of Congress, as indicated by the legislative history, is not in any way ambiguous. This section does not permit any exception.

It is clear that Congress was repeatedly advised by its responsible committees in charge of tax legislation and by the executive department responsible for assisting in the presentation and explanation of tax legislation that the new definition of "medical care" was intended to preclude the deduction of meals and lodging during the necessary absences from home for medical treatment. It is likewise clear that

Congress denied in section 213 of the 1954 Code the expenses of meals and lodging except where they are incurred "as part of a hospital bill." H. Rept. No. 1337, 83d Cong., 2d Sess., p. A60 (1954) ; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 219–220 (1954) ; sec. 1.213–1(e) (1) (iv) and (v), Income Tax Regs.; *Commissioner* v. *Bilder*, 369 U.S. 499 (1962) ; *Max Carasso*, 34 T.C. 1139 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961), certiorari denied 369 U.S. 874 (1962).

A fundamental error in the majority opinion is that section 262 is completely ignored. Section 262, which replaced section 24(a) (1) of the 1939 Code, reads: "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." Section 262 eliminated the former special reference to "extraordinary medical expenses" and provided instead that no deduction of living expenses (which of course includes meals and lodging) would be allowed unless expressly provided in another section of the same chapter of the statute. This means that when a taxpayer asserts that meals and lodging incurred during absences from home necessary for medical care are deductible under the 1954 Code, he must carry the burden imposed by section 262 of pointing out where such expenses are "expressly" included among the deductible items related to medical care. This cannot be done here because there simply is no such express provision. Cf. *New Colonial Ice Co., Inc.* v. *Helvering*, 292 U.S. 435, 440 (1934).

In ascribing its own meaning to the word "transportation," the majority has also ignored one of the basic principles of statutory construction, i.e., that identical words appearing in different sections of the statute are presumed to have been used in the same sense and with the same meaning. See *Helvering* v. *Stockholms Enskilda Bank*, 293 U.S. 84 (1934) ; *Noteman* v. *Welch*, 108 F. 2d 206 (C.A. 1, 1939) ; and *Homer H. Marshman*, 31 T.C. 269 (1958), reversed on other grounds 279 F. 2d 27 (C.A. 6, 1960). For example, Congress provided for "travel" expenses in section 62(2) (B) and for "transportation" expenses in section 62(2) (C) as deductions which are allowed in the computation of adjusted gross income. Section 1.62–1(g), Income Tax Regs., which fairly and validly implements the provisions of the statute, provides that "transportation" is a narrower concept than "travel," and *does not include meals and lodging*. By contrast, the words "travel" and "traveling" include meals and lodging. There is no doubt in my mind that Congress, fully aware of the differences in the statutory meaning between "transportation" and "travel," carefully chose and used "transportation" in section 213(e) (1) (B). The word clearly has the same meaning in section 213(e) (1) (B) as it has in section 62(2) (C). Certainly the Supreme Court is not doubtful about the meaning of "transportation" or the congressional intent, for it said

in *Commissioner* v. *Bilder*, *supra* at 501–502, that the position is "unassailable" that—

it was the purpose of Congress in enacting § 213(e)(1)(A) of the 1954 Code, * * * to deny deductions for all personal or living expenses incidental to medical treatment other than the cost of transportation of the patient alone, that exception having been expressly added by subdivision (B) to the definition of "medical care" in § 213(e)(1). * * *

Surely, the plain, ordinary, natural, and familiar meaning of the word "transportation" is preferable to any hidden sense that the studious attention of a keen mind (my brother Judge Tannenwald), spurred by the exigency of a hard case, would discover. Cf. *Hanover Bank* v. *Commissioner*, 369 U.S. 672–688 (1962); *Malat* v. *Riddell*, 383 U.S. 569, 571 (1966). Indeed, the search for the meaning of a word is too often the pursuit of a mirage.[1]

Finally, I think it is legally unsound and illogical to make a distinction, as the majority opinion does, between meals and lodging *at the place* where medical treatment is received and meals and lodging while "in transit" to such place. Clearly the costs of meals and lodging at the place of medical care are not deductible. *Commissioner* v. *Bilder*, *supra*, *Max Carasso*, *supra*. I would apply the same principle to the "in transit" living expenses. Under the majority opinion, taxpayer A, who lives in Washington, D.C., and stops off for lunch on the way to receive medical treatment at the Washington Hospital Center, could not deduct the cost of his meal as a medical expense; but taxpayer B, who lives in Cumberland, Md., and stops off for lunch in Frederick before arriving at the Washington Hospital Center for treatment, can deduct the cost of his meal as a medical expense. The result is incongruous. Obviously Congress intended that both should be disallowed because only meals and lodging which are part of the "cost of inpatient hospital care" are expenditures for medical care. Sec. 1.213–1 (e)(1)(v), Income Tax Regs. Therefore, I would decide this issue for the respondent.

TIETJENS, WITHEY, and SCOTT, *JJ.*, agree with this dissent.

---

[1] "The question is," said Alice, "whether you *can* make words mean so many different things." "The question is," said Humpty Dumpty, "which is to be master—that's all!" Carroll, "Through the Looking Glass," 127–128.