ROBERT M. ROSE and DORIS D. ROSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rose v. Commissioner
Docket No. 2052-68.
United States Tax Court
T.C. Memo 1973-1; T.C. Memo 1973-1; 1973 Tax Ct. Memo LEXIS 285; 32 T.C.M. (CCH) 1; T.C.M. (RIA) 73001; January 2, 1973, Filed *285 Petitioners' daughter, Suzanne, suffered from asthma aggravated by a bronchial infection and an allergy to dust. On the advice of her doctors, she lived in Arizona during the first part of 1965 and in Florida during the later part of 1965 and 1966. Her mother lived with her. Held: (1) The living expenses of Suzanne and her mother are not deductible medical expenses; (2) The petitioners have failed to show that certain telephone, travel, and automobile repair expenses are deductible medical expenses; and (3) The petitioners have failed to show that they are entitled to a greater deduction for medicine and drugs than the respondent allowed. 2 Robert M. Rose, pro se. Bruce A. McArdle, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION
SIMPSON, Judge: The respondent determined deficiencies in the petitioners' Federal income tax of $1,445.91 for 1965 and $1,535.40 for 1966. The issues for decision are: (1) Whether the petitioners are entitled to deduct amounts expended for the lodging and maintenance of Mrs. Rose and their daughter as medical expenses, (2) whether the petitioners are entitled to deduct as medical expenses certain travel, telephone, and automobile *286 repair expenses allegedly incurred with respect to their daughter's illness, and (3) whether the petitioners expended more for medicine and drugs than the amount determined in the deficiency notice. FINDINGS OF FACT
The petitioners, Robert M. and Doris D. Rose, are husband and wife. At the time the petition was filed in this case, Dr. Rose resided in Metairie, Louisiana, and Mrs. Rose resided in Sarasota, Florida. They filed their joint Federal income tax returns for the years 1965 and 1966 with the district director of internal revenue, New Orleans, Louisiana. 3 Suzanne Rose, the petitioners' daughter, was born in 1954. Prior to 1964, she had suffered from occasional minor attacks of asthma. During July and August 1964, she had several severe asthmatic attacks and was hospitalized four times. Her condition was diagnosed as one of severe bronchial asthma, and it was discovered that Suzanne was also suffering from a bronchial infection, which aggravated her asthma. Furthermore, sensitivity tests given to Suzanne revealed that she was allergic to house dust. Considering this allergy to be a likely cause of Suzanne's respiratory difficulty, her doctors began a program of desensitizing *287 injections for the purpose of immunizing her from the offending allergens and advised the petitioners to keep Suzanne's bedroom as free from house dust as possible. To this end, Dr. Rose washed and repainted the walls of Suzanne's room, and removed the window draperies and much of the furniture. A new vinyl flooring was also laid down over the old flooring which had cracks that could act as a haven for dust particles. In spite of Dr. Rose's efforts, Suzanne's condition did not improve when she stayed at home. It was felt that the desensitizing program would not be effective, if at all, for a long time, and her physicians advised that she be taken to Destin, Florida, for a change of 4 climate. Suzanne and her mother went to Destin and stayed in a motel. It was possible to keep the motel room relatively free from dust since there were only a few articles of furniture, most of which were upholstered with a plastic material. Suzanne returned to New Orleans to begin the fall term of school, and through December 1964, she missed only 4 days of school. On account of the dust in the Rose house, it was decided to rent an apartment for Mrs. Rose and Suzanne. The apartment was chosen *288 because it was on a floor high above the ground and because its location provided ready access to the hospital, in case Suzanne should have a severe asthmatic attack. Suzanne and her mother lived in the apartment until sometime in December 1964. Suzanne's rooms in Destin and New Orleans were very similar. Both contained minimal furniture so as to limit the amount of dust. The pillows and mattresses were covered with allergenic covers, and Suzanne's drugs were kept in the room. The only pieces of medical equipment in the rooms were an air compressor (which was purchased from Sears, Roebuck and Company for about $32), a portable, self-contained nebulizer or vaporizer (which retailed for about $18), and a syringe for administering 5 drugs. The air compressor and nebulizer are widely used by asthmatics in their homes for producing a fine mist for the purpose of inhalation, and Suzanne possessed a pocket-size nebulizer, which she carried with her for use when away from home. From October 16, 1964, through December 23, 1964, Suzanne, twice weekly, was treated by an allergy specialist. At each visit, Suzanne received desensitizing injections, the last of which caused a severe reaction *289 resulting in hemorrhage spots all over her body and a large area of hemorrhage at the place of injection. It was, therefore, determined by her doctor that she should not receive any further injections. Following the advice of Suzanne's doctors, Suzanne and Mrs. Rose flew to Phoenix, Arizona, on December 29, 1964. They stayed in a motel until early in January 1965, when Dr. Rose arrived. At that time, the family drove to Tucson, Arizona, and Mrs. Rose and Suzanne rented a cottage at the Desert Trail Ranch. After Dr. Rose returned to New Orleans on January 17, 1965, Mrs. Rose and Suzanne remained at the ranch where they resided until sometime in May 1965. While living in Tucson, Suzanne was an out-patient at a local clinic. During such time, she was never hospitalized as a result of an attack of asthma, but she was hospitalized in April 1965 for studies to determine 6 whether she had a cardiac defect. She had no such defect. During April 1965, Dr. Rose visited his wife and Suzanne in Tucson. Suzanne's doctors in Arizona believed that the moist air of the Florida coastal areas would be more beneficial to Suzanne than the dry Arizona air. Therefore, Mrs. Rose and Suzanne moved *290 to Sarasota, Florida, where they have continued to reside except for a brief stay in Key West, Florida, and yearly trips to New Orleans. Each such trip to New Orleans has resulted in an aggravation of Suzanne's illness. While in Florida, Suzanne was neither hospitalized nor confined to bed for any extended period of time, and she attended school in Sarasota during the 1965-1966 and 1966-1967 school years without any substantial absence. Suzanne's rooms in both Tucson and Sarasota were nearly identical. They were stripped of rugs and curtains, and the furniture in the rooms consisted of a bed, a chair, and a night stand. Allergenic covers, which may be purchased in a department store, were placed on her mattress and pillows, and Suzanne's drugs were kept on the night stand. The only pieces of medical equipment in the rooms were the air compressor (which had been purchased from Sears, Roebuck and Company), the portable, 7 self-contained nebulizer, and a syringe for administering drugs. During 1964, and apparently 1965 and 1966, Mrs. Rose performed a limited amount of activities in the nature of nursing services. Her primary responsibility in this regard was giving Suzanne intramuscular *291 injections of various medicines by syringe. This task, the requisite techniques of which can be learned in a few minutes, was particularly easy for Mrs. Rose because Dr. Rose, many years prior to 1964, had taught her to give him injections. Also, during 1964, as well as during 1965 and 1966, Mrs. Rose, on occasion, aided Suzanne in the operation of her compressor and nebulizer. Mrs. Rose had no special or professional training as a nurse. During 1965 and 1966, Dr. Rose and his son lived in New Orleans, and Dr. Rose's expenses in maintaining his New Orleans household during this time were substantially the same as when his wife and Suzanne resided in New Orleans. On their Federal income tax return for 1965, the petitioners deducted as medical expenses $5,300.00 for the maintenance of Mrs. Rose and Suzanne in Tucson and in Sarasota, $950.00 for travel expenses incident to Suzanne's illness, and $167.36 for long-distance telephone 8 calls "re Daughter's treatment." They also claimed expenditures of $411.50 for drugs and medicine in 1965, of which $350.46 was attributable to Suzanne. On their Federal income tax return for 1966, the petitioners deducted as medical expenses $4,800.00 *292 for the maintenance of Mrs. Rose and Suzanne in Sarasota, $58.58 for long-distance calls, $27.02 for repairs to Mrs. Rose's car, and $360.00 for travel between New Orleans and Sarasota. They also claimed expenditures of $237.91 for drugs and medicine, of which $187.18 was attributable to Suzanne. In his deficiency notice, the respondent disallowed the maintenance and telephone expenses for 1965 and 1966. He also disallowed $832.50 for the travel expenses for 1965, all of the travel expenses for 1966, and the car repair expense for 1966. He allowed an increase in the drug and medicine deduction for 1965 of $263.75 and an increase for 1966 of $142.56. OPINION The issues to be decided are: (1) Whether the petitioners are entitled to deduct amounts expended for the lodging and maintenance of Mrs. Rose and their daughter as medical expenses, (2) whether the petitioners are entitled to deduct as medical expenses certain travel, 9 telephone, and automobile repair expenses allegedly incurred with respect to their daughter's illness, and (3) whether the petitioners expended more for medicine and drugs than the amount determined in the deficiency notice. The costs of meals and lodging are *293 ordinarily personal expenses, and section 262 of the Internal Revenue Code of 1954[1] denies a deduction for personal expenses, except as otherwise provided. Section 213 allows a limited deduction for the expenses of medical care. Under section 23(x) of the Internal Revenue Code of 1939, the predecessor of section 213, the costs of meals and lodging incidental to a trip necessary and prescribed for medical reasons were deductible expenses for medical care. See L. Keever Stringham, 12 T.C. 580 (1949), affd. per curiam 183 F. 2d 579 (C.A. 6, 1950). However, in connection with the enactment of section 213, the committee reports state: Subsection (e) defines medical care to mean amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of diseases or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or for transportation primarily for and essential to medical care. The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that 10 it specifically *294 excludes deduction of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible but not his living expenses while there. However, if a doctor prescribed an appendectomy and the taxpayer chose to go to Florida for the operation not even his transportation costs would be deductible. The subsection is not intended otherwise to change the existing definitions of medical care, to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as part of a hospital bill. [H. Rept. No. 1337, 83d Cong., 2d Sess., p. A60 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 219-220 (1954).] In section 1.213-1(e) (1) (iv) and (v) of the Income Tax Regulations, medical care is defined to include the costs of meals and lodging when a taxpayer is at a hospital *295 or similar institution. In Commissioner v. Bilder, 369 U.S. 499 (1962), revg. 289 F. 2d 291 (C.A. 3, 1961), and 33 T.C. 155 (1959), the Supreme Court, based on the language in the committee reports, upheld the regulation's definition of medical care and denied a deduction for the costs of meals and lodging even though the trip was prescribed by a doctor for medical reasons. Robert M. Rose, 52 T.C. 521 (1969), affd. per curiam 435 F. 2d 149 (C.A. 5, 1970), cert. denied 402 U.S. 907 (1971); see John Robinson, 51 11 T.C. 520 (1968), affd. per curiam 422 F. 2d 873 (C.A. 9, 1970); W. B. Counts, 42 T.C. 755 (1964). Thus, it is clearly established that when section 213 was enacted, the definition of medical care was changed, and the costs of meals and lodging, while at a location prescribed by a doctor for medical reasons, are not to be included therein, except when a patient is hospitalized or at an institution primarily for medical care. Compare Morris C. Montgomery, 51 T.C. 410 (1968). In all other circumstances, the costs of such meals and lodging are to be treated as nondeductible personal expenses. In this case, there is no doubt about the seriousness of Suzanne's condition - we *296 fully accept the testimony indicating that she could not for medical reasons remain in New Orleans and had to live elsewhere. Nevertheless, the costs of her food and lodging while living in Arizona and Florida do not come within the approved definition of medical care and may not therefore be deducted under section 213. In drawing the line between the situations in which such expenses may be included in deductible medical care and the situations in which they are to be treated as nondeductible personal expenses, Congress has clearly manifested its intention that under these circumstances, the expenses should be treated as personal. 12 The petitioners contend, nevertheless, that the Bilder case is distinguishable because the taxpayer could have lived in Newark, whereas Suzanne could not live in New Orleans, and that the taxpayer in Bilder did not incur the expenses of maintaining two households, whereas the petitioners did incur such expenses. However, in Bilder, the respondent conceded that the taxpayer's stay in Florida was a necessary part of the medical treatment, just as Suzanne's stays in Arizona and Florida were a necessary part of her medical care. Under such circumstances, *297 the alleged differences in the severity of the diseases is not relevant to the question of deductibility under section 213. See Robert M. Rose, supra.Similarly, the petitioners' duplicate expense argument must be rejected. The same argument was presented and rejected in Robert M. Rose, supra, which involved the deductibility of expenses relating to Suzanne's illness in 1964. The legislative history indicates that the costs of meals and lodging, at a locality prescribed by a doctor for medical reasons, were to be included in deductible medical care only when the patient was hospitalized or in a similar institution; there is no basis for treating such costs as a part of deductible medical care in other situations simply because a family incurs duplicate household expenses. See sec. 1.213-1(e) (1) (v), Income Tax Regs. 13 Clearly, Suzanne's rooms during 1965 and 1966 were not hospital rooms in the traditional sense. Nor can they be considered to have duplicated a hospital environment. See Robert M. Rose, supra.The rooms in which Suzanne lived during 1965 and 1966 were not significantly different from the rooms in which she lived during the last 4 months of 1964. In each instance, *298 allergenic pillow and mattress covers were used; and the room contained prescription drugs, an $18 nebulizer, a $32 air compressor, and a minimal amount of furniture. There is no indication that Suzanne was confined to bed for an extended period of time in any of these rooms. In Robert M. Rose, supra, we held that the rooms in which Suzanne lived during the latter part of 1964 did not duplicate a hospital environment, and we now hold that the rooms in which Suzanne lived during 1965 and 1966 also did not duplicate a hospital environment. We, therefore, hold that Suzanne's living expenses during 1965 and 1966 are not deductible medical expenses. Similarly, we hold that the living expenses of Mrs. Rose are not deductible. The record does not disclose any significant differences between the role she played in the latter part of 1964, and the role she played in 1965 and 1966, and in Robert M. Rose, supra, we disallowed any deduction for the living expenses of Mrs. Rose. 14 See Leo R. Cohn, 38 T.C. 387 (1962); Max Carasso, 34 T.C. 1139 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961). The second issue to be decided involves the deductibility, as medical expenses, of certain telephone, travel, *299 and automobile repair expenses which the respondent disallowed. The record not only lacks substantiation as to the amount of the telephone expenditures, but there is also no indication as to how the telephone expenses were necessarily incident to Suzanne's medical care or to whom the calls were made. Similarly, there has been no substantiation as to the amount claimed to have been spent for traveling or showing as to who did the traveling. Travel expenses incurred by Dr. Rose to make personal visits to Suzanne are not deductible ( Robert M. Rose, supra), and there is no showing that Suzanne's trips to New Orleans were for medical reasons. In fact, such visits aggravated Suzanne's condition. As to the automobile repair expense, there is neither substantiation as to amount nor a showing of how it could be a medical expense. Because the petitioners have not shown that the respondent's determination is invalid, we must uphold it. Welch v. Helvering, 290 U.S. 111 (1933); J. M. Lyon, 1 B.T.A. 378 (1925); see Rule 32, Tax Court Rules of Practice.
At trial, the petitioners claimed a deduction in 1965 and 1966 for medicine and drugs in excess of that 15 allowed by the respondent in *300 his determination. The respondent allowed a deduction for drugs and medicine which exceeded the amounts shown on the drug store receipts for prescriptions and the bills from drug companies on which Dr. Rose indicated which drugs were for Suzanne and which were for his medical practice. The deduction allowed by the respondent also exceeded that claimed by the petitioners on their returns for 1965 and 1966. Their claim for a larger deduction was based on certain cash register tapes, but since such tapes did not indicate even the items purchased, they fail to establish that they reflected purchase of drugs and medicines that would be deductible under section 213. Therefore, we hold that the petitioners have failed to prove that they are entitled to a greater deduction for drugs and medicines than that allowed by the respondent. Welch v. Helvering, supra; J. M. Lyon, supra; see Rule 32, Tax Court Rules of Practice.
The petitioners contend that their failure to carry their burden of proof was due to the fact that this Court unjustifiably denied them the opportunity to present evidence. However, two hearings, the second one consisting of two sessions, were held on this case. At *301 the end of the first hearing, the petitioners had presented no evidence to substantiate their claimed expenditures, and 16 this Court pointed out to the petitioners their failure to present such evidence and took the extraordinary step of scheduling another hearing to give the petitioners an additional opportunity to present such evidence. At both the morning and afternoon sessions of the second hearing, the petitioners presented the evidence considered in this opinion and indicated that they had completed their case. After the record was closed, the petitioners sought to stipulate into evidence the amounts which Mrs. Rose spent on food during 1965 and 1966. They stated that they had "a bag full of grocery receipts," but it was apparent that such amounts could not be readily computed. Although the offer might have been denied as untimely, the Court suggested to the petitioners that if they could work out a stipulation with the respondent, the record would be kept open to allow it to be submitted. No stipulation has been submitted to this Court. Thus, this Court went to extraordinary means to provide the petitioners with every reasonable opportunity to submit evidence that might *302 be helpful to their case.Moreover, the evidence as to the amounts spent by Mrs. Rose for groceries would not, in any event, have helped their case, since the living expenses of Suzanne and Mrs. Rose are not deductible as a matter of law. Such receipts also would not have 17 helped the petitioners in proving that they spent any additional amounts on drugs or medicines or that any of the travel, automobile repair, or telephone expenses were deductible medical expenses. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩