WILLIAM L. PFERSCHING and BONNIE J. PFERSCHING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pfersching v. Commissioner
Docket No. 29046-81.
United States Tax Court
T.C. Memo 1983-341; 1983 Tax Ct. Memo LEXIS 442; 46 T.C.M. (CCH) 424; T.C.M. (RIA) 83341; June 13, 1983. William L. Pfersching and Bonnie J. Pfersching, pro se. Scott McCallum, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned to and heard by Special Trial Judge Fred R. Tansill, pursuant to the provisions of section 7456(c) of the Internal Revenue Code *443 [1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE TANSILL, Special Trial Judge: Respondent has determined a deficiency of $644 in income tax for 1978 and a deficiency of $372 in income tax for 1979. Two issues have been presented for our consideration as follows: (1) Whether petitioners, under section 213 of the Code, may depreciate the cost of their van as a medical expense during each of the taxable years, and (2) whether petitioners may deduct the cost of meals and lodging for themselves and for a son while they were traveling to Kentucky and back seeking medical treatment for their son during 1978. Petitioners resided in Las Vegas, Nevada at the time of filing their joint Federal *444 income tax return for the taxable years as well as at the time of filing a joint petition in this Court. At the commencement of trial in this case, which had originally been classified as a small case, it was, pursuant to the request of the petitioners, reclassified as a regular case. Both issues in this case grow out of the fact that one of petitioners' children, a son named William Lee Pfersching, II (Billy), who was born on August 14, 1965 had developed idiopathic scoliosis by eight years of age (1973). For convenience the facts and opinion are combined. 1. Depreciation on Van
As a youth Billy had showed signs of idiopathic scoliosis which involved a double curvature of the spine. If not corrected, this process will cause deterioration of the spine and the child will become immobile. One of the methods of treatment for the problem, still quite new at the time, was to place so-called "Harrington rods" on each side of the patient's spine which was an effort to support and stretch the spine so the child could grow. Operations required for this purpose had to be performed every three months. By the year 1978, Billy was three feet, six inches in height, 14 years of *445 age and did not weigh much. He had undergone 10 operations for his problem. By 1978, it was found to be very difficult to transport Billy in an ordinary car. This was basically because of the metal brace he wore from the neck to below his hips which would not allow him to bend at the waist. The doctor who was responsible for his treatment advised that an appropriate van be purchased and equipped so that Billy could travel in a horizontal, straightout position. Therefore, at the doctor's suggestion, petitioners purchased a stripped van which was just a shell and then proceeded to have it equipped in a special fashion inside so as to accommodate Billy's problems. Because Billy could not bend, the van to be purchased had to have double side doors or a side opening. Billy had to be lifted and placed in the vehicle lying flat on a special couch which was installed. Billy could not use a wheelchair because he was unable to bend at the waist. He was able to bend his knees, but all other joints of his body were rigid. The van purchased was a 1977 Dodge van with a short axle and two double doors on the sides. The van was classed as a three quarter ton capacity. This stock van was *446 purchased in 1978 at a base cost of $6,729. Although it had not previously been used, the van was one year old at the time of purchase. Adding all of the special features and other equipment inside the van (a special couch and heavy carpeting) brought its total cost to $9,155. Petitioners have claimed a deduction for depreciation based on the total cost of the van and equipment, using a 4-year useful life. The respondent has allowed a medical expense deduction for the cost of the special equipment installed in the van, but has denied the depreciation deduction on the van itself. The depreciation claimed for 1978 on the van itself was $1,980 and for 1979, $1,522. Respondent also allowed a deduction for medical travel expenses claimed in connection with transporting Billy from home to hospitals and to schools and various other travel associated with treatment of his ailment. We have great sympathy for petitioners and their conscientious efforts to deal with the unfortunate illness of their son. We are, however, compelled to conclude that the van depreciation is not allowable because it does not meet the requirements of the statute. Section 213(a) allows as a deduction certain *447 expenses "paid during the taxable year" for "medical care." Section 213(e) [3] defines the term "medical care" to include amounts paid for "the diagnosis, cure, mitigation, treatment or prevention of disease, or for the purpose of affecting any structure or function of the body." In addition, it includes "amounts paid" for "transportation primarily for and essential to" such care. Depreciation is not an "expense paid" or "amount paid" within the meaning of section 213. Elwood v. Commissioner,72 T.C. 264 (1979); Gordon v. Commissioner,37 T.C. 986 (1962). See also, Weary v. United States,510 F.2d 435 (10th Cir. 1975). Therefore, petitioners' claimed deduction cannot be allowed to the extent that it represents depreciation on the *448 van. Respondent is sustained on this issue. 2. Meals and Lodging Expenses
In 1978, petitioners and Billy traveled from Nevada to Kentucky, where Billy received special treatment and operations. They returned to Nevada in the same year. Petitioners deducted medical travel costs of 7 cents per mile with respect to this trip, and respondent allowed this deduction. In addition, petitioners deducted the cost of meals and lodging for themselves and Billy while on the trip, a total of $313. This additional deduction for meals and lodging was disallowed by respondent. Respondent relies on Commissioner v. Bilder,369 U.S. 499 (1962), revg. 289 F.2d 291 (3d Cir. 1961), which affirmed in part and reversed in part 33 T.C. 155 (1959), wherein the Supreme Court disallowed medical deductions claimed for two months' lodging in a Florida apartment for the taxpayer and his family. However, in Montgomery v. Commissioner,51 T.C. 410 (1968), affd. 428 F.2d 243 (6th Cir. 1970), we concluded that the word "transportation" includes the cost of a taxpayer's meals and lodging necessarily incurred on trips required *449 to bring the patient to and from the place of treatment. 51 T.C. at 415. We distinguished between travel which is itself therapeutic, such as a vacation in a more desirable climate, and travel required to bring a patient to a place where medical aid is to be provided. The deduction is permitted in the latter instance. While the record is not as precise as we would like, the parties have stipulated that the expenses were incurred "traveling" to the hospital, a trip which we find to have been "required to bring the patient to the place of medication." Montgomery v. Commissioner,supra, at 414. Thus we sustain petitioner on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for 1977, unless otherwise indicated. ↩
2. Pursuant to the order of assignment on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Sec. 213(e) provides in part as follows: (e) Definitions.--For purposes of this section-- (1) The term "medical care" means amounts paid-- (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, (B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or↩