**Alex H. WASHBURN, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16530.**

United States Court of Appeals
Eighth Circuit.

Nov. 15, 1960.

---◆---

E. Chas. Eichenbaum, Leonard L. Scott and W. S. Miller, Jr., Little Rock, Ark., for petitioner.

C. Guy Tadlock, Exec. Asst. Tax Div., U. S. Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Myron C. Baum and Kenneth E. Levin, Attorneys, Dept. of Justice, Washington, D. C., for respondent.

Before SANBORN, WOODROUGH, and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

During the year 1955 the taxpayer, petitioner herein, was employed by the Star Publishing Company, an Arkansas corporation, as its sole salaried officer and publisher and editor of its daily newspaper published at Hope, Arkansas, called the Hope Star. He also owned fifty per cent of the corporation's capital stock. In 1955 the Arkansas Legislature passed an Act which exempted livestock and poultry feeds from the then existing 2% sales tax. Acts 1955, Act No. 94. During the same year the taxpayer expended the following amounts in securing the required number of signatures for the purpose of referring said exempting act to the vote of the people in the State of Arkansas at the November, 1955, general election:

| | |
|---|---|
| Direct canvassing expense | $3,266.43 |
| Hotels—canvassing | 223.10 |
| Postage, printing, express | 558.18 |
| Telephone | 444.35 |
| Legal services | 1,500.00 |
| Expenses, reimbursed to attorneys | 32.91 |
| Total | $6,024.96 |

The taxpayer felt that if the exemption of livestock and poultry feeds from the 2% sales tax should continue, an increase in the general sales tax rate would be enacted and such an increase would cause many purchasers to go to Texarkana, a neighboring town in Texas which had no sales tax, thus reducing business in Hope, Arkansas; such loss of business by merchants in Hope would cause a reduction of the income of the Star Publishing Company, particularly in its advertising income and consequently in the personal income from publishing company dividends to the taxpayer.

The taxpayer claimed the total amount of $6,024.96 as a deduction on his individual income tax return for the year 1955, and the Commissioner disallowed the deduction, resulting in an income tax deficiency against petitioner for that year of $2,015.78. On the trial of the taxpayer's petition to the Tax Court he claimed the right to the deduction on the grounds that the expenditures were deductible either as ordinary and necessary expenses in carrying on any trade or business under Section 162(a) of the Internal Revenue Code of 1954, 26 U.S.C. (1958 Ed.) § 162, or as ordinary and

necessary non-business expenses under Section 212(1) or (2) of the Code, 26 U.S.C. (1958 Ed.) § 212.

The Tax Court found that the purpose of the $6,024.96 expenditure made by the taxpayer in 1955 was to render null and void the legislative Act passed in 1955 granting sales tax exemption to live stock and poultry feeds, and that since such expenditure was made for the promotion or defeat of legislation, it was not deductible as ordinary and necessary to the carrying on of taxpayer's trade or business, or for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. The Tax Court also held that the possible benefit to the petitioner that might have resulted to him personally from the legislation he sought to affect by his expenditure was too remote and uncertain to justify his claimed deduction. The findings of fact and opinion of the Tax Court denying the deduction are reported at 33 T.C. No. 112.

It is contended for petitioner on this review that his $6,024.96 expenditure in 1955 (1) "qualify as ordinary and necessary business expenses under Section 162" and alternatively (2) that they "qualify under Sections 212(1) or (2), I.R.C.1954" and (3) that the Tax Court erred in denying the deduction on account of the Treasury Regulations. There is no dispute as to what the expenditures were or as to petitioner's purpose in making them. In order to connect them with the sections relied on, it is argued for petitioner that he regularly found it a necessary part of his duties as publisher of a small town newspaper to take positions and champion community causes and that he spent the money in question because he firmly believed that the law he sought to have annulled would result in injury to his source of livelihood. That as editor of a newspaper in promoting the welfare of his community and of the corporation employing him he was acting not simply for his own personal convenience, but was carrying out his ordinary duties

towards the corporation. Also that he was acting under permissive provisions of Arkansas law which reserve the power to the people to approve or reject at the polls any entire act and forbid any person to expend more than $25,000.00 in securing signers of petitions for that purpose.

It is pointed out for the Commissioner, on the other hand, that the parts of the Internal Revenue Code of 1954 upon which the taxpayer relies, Section 162 (a), supra, regarding ordinary and necessary business expenses, and Section 212(1) and (2), supra, regarding ordinary and necessary non-business expenses, are practically verbatim re-enactments of the corresponding provisions of the 1939 Code, Sections 23(a) (1) (A) and 23(a) (2). During 1955, the tax year involved here, the Regulations under the corresponding sections of the 1939 Code were then applicable. T.D. 6091, 1954–2 Cum.Bull. 47. These included the following provision from Section 39.23(o)–1(f) of Treasury Regulations 118:

"(f) Sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses are not deductible from gross income."

The corresponding Regulations adopted under the 1954 Code by T.D. 6291, 1958–1 Cum.Bull. 63, as amended by T.D. 6435, 1960–4 Int.Rev.Bull. 7, are included in Section 1.162–15 of Treasury Regulations on Income Tax (1954 Code).

In Textile Mills Securities Corp. v. Commissioner, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249, the Supreme Court had upheld the validity of this provision when it was part of Article 262 of Treasury Regulations 74. The Supreme Court said that it was applicable to prevent deduction under Section 23(a) of amounts spent for lobbying, even though the regulation was not specifically incorporated under Section 23(a). See also

American Hardware & Equipment Co. v. Commissioner, 4 Cir., 202 F.2d 126. It is fair to conclude, on the basis of the Textile Mills case, that this sentence, after its incorporation in Regulations 118 as Section 39.23(o)–1(f), remained applicable under Section 23(a) of the 1939 Code, and that it became applicable, by reason of T.D. 6091, supra, to Sections 162(a) and 212(1) and (2) of the 1954 Code. At the time of the Textile Mills decision, Section 23(a) provided only for the deduction of ordinary and necessary business expenses. It did not provide for the deduction of ordinary and necessary non-business expenses. When provision for the latter was made in the Revenue Act of 1942, c. 619, 56 Stat. 798, Section 121, the old business expense provision became Section 23(a) (1) (A) and the new non-business expense provision became Section 23(a) (2). That Congress intended the regulation to remain applicable to Section 23(a) as a whole, including the new non-business expense section, is shown by the following excerpt from S.Rep.No.1631, 77th Cong., 2d Sess., p. 88 (1942–2 Cum.Bull. 504, 571), and H.Rep.No.2333, 77th Cong., 2d Sess., p. 75 (1942–2 Cum.Bull. 372, 430), concerning Section 23(a) (2):

"A deduction under this section is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of the deduction under Section 23(a) (1) (A) of an expense paid or incurred in carrying on any trade or business."

The regulation was therefore clearly applicable both to Section 162(a) of the 1954 Code, the successor to Section 23(a) (1) (A) of the 1939 Code, and to Section 212(1) and (2) of the 1954 Code, the successor to Section 23(a) (2) of the 1939 Code, pending adoption of Regulations under the 1954 Code.

The taxpayer does not disagree with this analysis, but has assumed that the regulation was in effect, while arguing that it is not applicable to the particular facts of this case. The Commissioner submits that the regulation is applicable to these facts; that the taxpayer is not entitled to the claimed deduction because his expenditures were for "the promotion or defeat of legislation"; and that the Tax Court's decision should be affirmed, not only because it is based on findings of fact which are not clearly erroneous (see Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171; Revere Racing Ass'n v. Scanlon, 1 Cir., 232 F.2d 816), but also because no other result would be possible under the applicable decisions. Cammarano v. United States, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462; Roberts Dairy Co. v. Commissioner, 8 Cir., 195 F.2d 948; Old Mission Portland Cement Co. v. Commissioner, 9 Cir., 69 F.2d 676, affirmed on other issues 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367.

Cammarano consisted of two cases (one of which arose from this Court under the name F. Strauss & Son, Inc. of Ark. v. Commissioner, 8 Cir., 251 F.2d 724) in which the taxpayers were wholesale liquor dealers. In one case, the taxpayers were partners who contributed to a trust fund which was engaging in a publicity program to defeat an initiative measure that would have placed all retail beer and wine sales exclusively in the hands of the state. In the Strauss case, the corporate taxpayer contributed to an organization which was engaged in a publicity program to defeat an initiative measure providing for statewide prohibition. The taxpayers sought to deduct these contributions as ordinary and necessary business expenses under Section 23(a) (1) (A) of the 1939 Code. Upholding the validity of the immediate predecessor of Section 39.23(o)–1 of Treasury Regulations 118, the Supreme Court specifically rejected the taxpayer's contention (358 U.S. at page 504, 79 S. Ct. at page 528):

"that the Regulations cannot properly be construed as applicable to expenditures made in connection with efforts to promote or defeat the passage of legislation by persuasion of the general public as opposed to di-

rect influence on legislative bodies, that is 'lobbying';"

The Court said (358 U.S. at page 505, 79 S.Ct. at page 529):

"We think that the Regulations must be construed to mean what they say—that not only lobbying expenses, but also sums spent for 'the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising' are nondeductible."

The Court also rejected the taxpayer's argument that initiative measures were not "legislation," noting that the measures if passed by the people would have had the effect and status of ordinary laws in every respect under provisions of the respective state constitutions. One of these constitutional provisions was Amendment 7 of the Arkansas Constitution, also involved in the instant case and cited by the taxpayer. Noting that these constitutional provisions explicitly intended to vest legislative power in the people, the Court said (358 U.S. at page 506, 79 S.Ct. at page 529):

"Every court which has considered the question has found these provisions to be fully as applicable to initiatives and referendums as to any other kind of legislation."

■ The facts in the instant case come within the purview of Strauss and Cammarano. Here the taxpayer expended money for the purpose of obtaining sufficient signatures to make possible the referendum of an existing state statute to the people under the same state constitutional provision involved in Strauss. A referendum is clearly a legislative measure under the Supreme Court's decision, and therefore the expenditures made by the instant taxpayer to promote the referendum in this case are no more deductible than the expenditures in Strauss and Cammarano made to defeat an initiative measure. The taxpayer here argues that he expended these funds only for the purpose of securing signatures to make possible the referendum, and not for the promotion or defeat of legislation. But obviously he was doing it for the purpose of annulling the existing legislation. Having found this purpose as a fact, the Tax Court necessarily held the expenditures non-deductible under the specific provisions of the Treasury Regulations.

■ As to the finding and conclusion of the Tax Court that the possible benefit to the petitioner that might have resulted from the legislation for which he made the expenditures was too remote and uncertain to justify the claimed deduction, it is pointed out that he was only an officer and stockholder of the Star Publishing Corporation which was a separate taxable entity having a "trade or business" in respect to which it had its own tax obligations and deductions and which was not identical with his business of being an editor. There was no proof that this taxpayer was required by the Star Publishing Corporation to make the expenditures; he appears to have made them entirely of his own volition and they have no "reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income." The case of Schmidlapp v. Commissioner, 2 Cir., 96 F.2d 680, 681, is cited for the petitioner. There the taxpayer, Vice President of a bank, spent $590.75 to entertain bank customers, the item being shown as "Recess Club Charges" which were held to be deductible "so far as they really were to drum up business for the bank," "though it was proper to be extremely suspicious as to how far that was their purpose." But "drumming up customers" is ordinary business for a bank.

The circumstances under which the expenditures here in issue were made by the taxpayer fully support the finding of the Tax Court that they were neither necessary nor ordinary in carrying on the petitioner's business as editor of the newspaper, nor as a holder of capital stock in the corporation, and that the objects of his expenditures to obtain a popular vote to annul the exemptions in the sales tax statute because he thought

the legislature would otherwise enact a higher sales tax statute which would result in diverting business from the town of Hope and ultimately result in less advertising for the paper and in the end less dividends for the petitioner—were too remote to be classified as either his necessary or his ordinary business or non-business expenses.

Finding no error, the decision of the Tax Court is

Affirmed.