George E. Johnson and Elizabeth Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 85506.
United States Tax Court
T.C. Memo 1962-299; 1962 Tax Ct. Memo LEXIS 9; 21 T.C.M. (CCH) 1590; T.C.M. (RIA) 62299; December 21, 1962
*9 Petitioner was a salaried employee of several corporations during the taxable year 1955. He had no income from other sources but was active in attempting to promote legislation in his field of interest, i.e., the establishment of variable annuity corporations in two states. Held, that attorney's fees and miscellaneous expenses incurred by petitioner in efforts to secure the passage of such legislation are not deductible from gross income. Cammarano v. U.S., 358 U.S. 498, followed. Held, also, that such expenses were personal in nature and not deductible by petitioner under any provision of the Internal Revenue Code. George E. Johnson, 7106 Lenhart Dr., Chevy Chase, Md., pro se. William L. Kinzer, Esq., for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent determined a deficiency in the petitioners' income tax for the calendar year ended December 31, 1955, in the amount of $781.52, all of which is in controversy. The issue presented is whether respondent erred in disallowing a claimed deduction for attorney's fees and miscellaneous expenses totaling $2,202.02. Findings of Fact Some of the facts have been stipulated and they are found accordingly. The petitioners are husband and wife residing in Chevy Chase, Maryland. They filed an original joint individual income tax return (Form 1040) for 1955, with the district director of internal revenue, Newark, New Jersey, and an amended joint return with the district director of internal revenue, Baltimore, Maryland. Both of those returns reported gross income totaling $25,288.82, derived solely from salaries, subject to withholding, paid to petitioner George E. Johnson. Reference to "petitioner" hereafter made shall be to *11 him alone. Petitioner engaged in active law practice in New York City during a period of years prior to 1935. He became interested in the subject of insurance and at various times subsequent to 1935 became a Fellow in the Life Office Management Institute (FLMI) and a Chartered Life Underwriter (CLU). During the period from 1945 to 1955, petitioner studied the problems of the aged and became a Fellow in the Gerontological Society and a director of the National Council on the Aging. At times he taught classes on the subjects of insurance and retirement. During the period from 1935 up to and including the first half of 1955, petitioner was an executive officer of the Teachers Insurance and Annuity Association (TIAA) of New York City which engaged in handling retirement problems of college teachers to fund their pension plans. Experience disclosed that the standard fixed dollar annuity, funded primarily with debt-type securities, failed to meet the rising cost of living. In 1951 petitioner and other officers of the TIAA developed the concept of a variable annuity which would tend to increase, along with rising prices, through the medium of being funded by equities in common stocks. *12 Pursuant to a special act of the New York Legislature and as a companion to TIAA, the College Retirement Equities Fund (CREF) was incorporated in 1952, and under its operations a part of a participating teacher's retirement was funded by equities in common stocks and was payable in terms of a certain number of units. From 1952 up to and including the first half of the taxable year 1955, petitioner was vice president and general counsel of both TIAA and CREF, and he received a salary for such services. He was never a stockholder in either of those companies. In 1954 petitioner organized a group of five persons who sponsored the introduction of a bill in the New York Legislature to authorize the incorporation of a company by special act with power to issue variable annuity certificates to the general public. Such bill was passed by the legislature, but was vetoed by the Governor upon recommendation of the State Superintendent of Insurance. A modified bill sponsored by petitioner's group and drafted with the approval of the State Insurance Department, was reintroduced in the New York Legislature in 1955, but failed passage. In 1955 petitioner, Rollin Browne, C. Lamont Post, and three *13 Maryland residents sponsored the introduction in the Maryland Legislature of House Bill No. 597 to authorize by special act a corporation with power to issue variable life income contracts. In the same year and because of opposition to that bill, those persons sponsored the introduction of House Bill No. 730 proposing general legislation authorizing any life insurance company to establish and operate a separate variable contract account and, also, the organization of life insurance companies for the exclusive purpose of issuing variable annuity contracts. Neither bill was enacted into law. In connection with drafting and presenting the proposed bills, the services of a prominent Baltimore law firm, which often acted as legislative counsel, were retained by petitioner, Browne, and Post. The name of a member of the law firm was registered on the Docket of Legislative Agents and Counsel and there was duly filed a statement of fees and expenses paid to counsel, as required by Maryland statutes. The petitioner and counsel attended numerous conferences with the Commissioner and the Actuary of the Maryland Insurance Department concerning the drafting of the two bills and, also, appeared before *14 legislative committee hearings as proponents for such bills. The Baltimore law firm charged petitioner, Browne, and Post fees in the sum of $4,850 plus $150 for miscellaneous disbursements or a total of $5,000 of which the petitioner paid $1,875 in 1955. During 1955 and in connection with seeking the passage of legislation in both New York and Maryland, petitioner incurred and paid miscellaneous expenses totaling $327.02, embracing stipulated amounts for telephone and telegraph, travel expense, postage, art materials, and articles and reprints. During the latter half of 1955 petitioner was paid a salary, subject to withholding, by the Variable Annuity Life Insurance Co., Inc., of Washington, D.C., which company was in existence for only a few months until its dissolution on December 20, 1955, without having written any policies. On or about December 30, 1955, a second company under the same name was incorporated under the laws of the District of Columbia, and petitioner became president and a member of the board of that company, on a salary basis. Petitioner was not a stockholder in either of those companies during 1955. In addition to the above-mentioned compensation, petitioner's *15 only other source of income reported on his 1955 return was a salary, subject to withholding, paid by J. D. Marsch & Associates of Washington, D.C.
During 1955 petitioner wrote various articles on the subject of variable annuities, but without any compensation therefor. Petitioner derived no income from any source during 1955, due to his activities in seeking New York and Maryland legislation. We find that such expenses did not arise out of, and were not connected with or required by, his employment. In or about 1956 petitioner became a general consultant on variable annuities, but he was not so engaged in 1955. We find that he was not engaged in any trade or business in the taxable year here involved, except for the business of earning his pay. On his income tax return for 1955, petitioner itemized various deductions from gross income including claimed "deductible expenses" embracing the attorney's fees and miscellaneous expenses totaling $2,202.02. The respondent determined that such expenses "relating to attempts to secure the passage of legislation, * * * are not deductible under section 162(a) of the Internal Revenue Code of 1954 or under any other *16 provision of the Internal Revenue Laws." Such determination resulted in the deficiency involved herein. Opinion Section 162(a) of the Internal Revenue Code of 1954 provides in general that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *," T.D. 6091, 1954-2 C.B. 47, dated August 16, 1954, issued under authority of section 7805 of the 1954 Code, provided that then existing Regulations were applicable to the provisions of the 1954 Code insofar as not inconsistent therewith. Treasury Regulations 118, section 39.23(o)-1(f), which were then applicable, provided: (f) Sums of money expended for lobbying purposes, the promotion or defeat of legislation * * * are not deductible from gross income. The Regulations subsequently promulgated under the 1954 Code embraced an essentially similar provision. [1]
*17 The validity of the cited regulation is no longer open to question, Cammarano v. United States, 358 U.S. 498 (1959), and Textile Mills Securities Corporation v. Commissioner, 314 U.S. 326 (1941), and the petitioner so concedes on brief. The petitioner contends, however, that because of his professional background in the fields of law, insurance, and problems of the aged, he elected in 1955 to engage in the business of pioneering the development of variable annuities to fill a public need; that the expenses incurred in 1955 were reasonable and necessary in the pursuit of such business and were calculated to affect his future earnings as a consultant on variable annuities; that neither his alleged pioneering business nor the expenses were illegal, immoral, reprehensible, or against public policy; and that the instant case is distinguished on its facts from the above cited and other related cases. The cornerstone of petitioner's argument is that the regulation may not be properly sustained unless the words "lobbying purposes" and "promotion or defeat of legislation" are limited to activities which contravene public policy or frustrate sharply defined national *18 or state policy and, therefore, the regulation is not applicable to petitioner. We need not review the history and intent of the regulations under repeated reenactment by Congress of the underlying internal revenue laws nor discuss the numerous, and to some extent diverse, prior court decisions involving the application of the regulation, for the Supreme Court did so in Cammarano, supra. That case involved expenditures deemed necessary to defeat legislation so as to preserve a business from destruction and the taxpayer contended that unless the regulation was limited, as not applicable to the factual situation, it was invalid as contrary to the statute providing for the deduction of ordinary and necessary business expenses. In the course of its lengthy opinion the Court concluded that there was no justification for reading into the regulation the exceptions or limitations contended for by the taxpayer; that the regulation must be construed to mean that not only "lobbying" expenses but also sums spent for "the promotion or defeat of legislation" are nondeductible; that the deductions sought were "prohibited by Regulations which themselves constitute an expression of a *19 sharply defined national policy" and, further, that "the Regulations have acquired the force of law." However worthy the petitioner's inspiration to promote variable annuities to fill what he deemed to be a public need and even assuming that his 1955 activities and expenses may have contributed to establishing the petitioner as a variable annuity consultant subsequent to the taxable year 1955, the crucial fact herein is that the expenses pertained to the promotion of legislation. The rationale of the Cammarano case is controlling here. See Alex H. Washburn, 33 T.C. 1003, affd. 283 F. 2d 839 (C.A. 8, 1960), certiorari denied 365 U.S. 844 (1961); and Denver & Rio Grande Western Railroad Co., 38 T.C. , (filed August 3, 1962). Furthermore, petitioner was a salaried employee and, except for his engagement in the business of earning his pay, he was not otherwise engaged in a trade or business in the taxable year here involved. We have found that the expenses he seeks to deduct did not arise out of, and were not connected with or required by, his employment. They were, at most, of the sort held to be nondeductible in Noland v. Commissioner, 269 F. 2d 108 *20 (C.A. 4, 1959), affirming a Memorandum Opinion of this Court. See, also, McDonald v. Commissioner, 323 U.S. 57 (1944); and Mays v. Bowers, 201 F. 2d 401 (C.A. 4, 1953), certiorari denied 345 U.S. 969. Decision will be entered for the respondent. Footnotes
1. Treasury Regulations, section 1.162-15(c)(1), provided, in part: (c)(1) Expenditures for lobbying purposes, for the promotion or defeat of legislation * * * are not deductible from gross income.↩