JAMES M. JORDAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7323–71.   Filed August 27, 1973.

James M. Jordan, pro se.
*Dudley W. Taylor*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency of $348.60 in petitioner's 1968 Federal income tax.

One of the issues was conceded on brief by respondent which leaves for our consideration only the question whether petitioner is entitled to a deduction for purported expenses he incurred in connection with his lobbying activities.

### FINDINGS OF FACT

Petitioner is a resident of Atlanta, Ga., and lived there at all pertinent times herein. He filed his 1968 Federal income tax return with the Internal Revenue Service Southeast Service Center, Chamblee, Ga.

During 1967 and 1968, petitioner was employed by the Georgia Highway Department as a chemist. Petitioner believed there was a need for an organization to represent the Highway Department workers collectively,[1] so, in 1967 he and five other individuals formed the Georgia Highway Employees Association (GHEA) which is a non-profit corporation devoted to improving the wages and working conditions of all employees of the Georgia State Highway Department.

GHEA collected no dues from its members in the year of its inception but in 1968 the dues were $12 per member, part of which were collected. The dues were maintained in bank accounts in six different geographical areas of Georgia in 1968, and the GHEA representative in each area controlled the funds therein. The directors of GHEA, however, had the authority to designate how the funds were to be spent.

The membership of GHEA ranged, at various times from its inception in 1967 through 1969, between 100 and 800.

During 1968 petitioner was a member, director, and treasurer of GHEA. The organization's primary project at that time was to persuade the Georgia Legislature to establish a grievance committee composed of members from the Georgia Highway Department, the Georgia Legislature, and the Governor's office, which would consider the pos-

---

[1] There was a professional organization in existence in 1967 which sought better job benefits for engineers employed by the Georgia Highway Department. However, non-engineering personnel with the Georgia Highway Department were excluded from membership.

sibility of extending the benefits of the State Merit System to all employees of the Highway Department and raising their wages.

In pursuit of this objective, petitioner undertook lobbying activities. He purchased an electric mimeograph and various office supplies, and began to publish a newsletter, the "Road Runner," which he mailed to all GHEA members. Petitioner paid for the operation with his own funds. Additionally, at his own expense, petitioner called on the Governor and various members of the Georgia Legislature to lobby for legislation on the grievance committee, and he made numerous phone calls and trips to various parts of the State to confer with GHEA members and various members of the legislature about the proposed legislation.

The Georgia Highway Department did not allow petitioner any time off from his work to engage in these activities, and he was forced to use his spare time and annual leave to pursue these objectives. The Highway Department, through its assistant executive director, attempted to discourage petitioner from participating in the activities of GHEA.

The directors of GHEA, including petitioner, decided in 1968 not to allow any reimbursement to members for expenditures made by them in behalf of the organization. Accordingly, petitioner received no salary or reimbursed expenses for his work. At the end of 1968, however, there was a possibility that members would be reimbursed for their expenses at some later time; however, petitioner has not been reimbursed for the expenses here involved. In 1969 petitioner did receive a salary of $1 from GHEA for his continued efforts in its behalf.

On his 1968 return petitioner claimed a deduction of $902.70 for business expenses incurred in his lobbying activities. He itemized the expenses giving rise to the deduction as follows:[2]

| | | | |
|---|---|---|---|
| Business trip mileage expense | $668.75 | Ink for mimeograph | $9.84 |
| Meals attendant to business trips | 129.99 | Postage | 69.00 |
| | | Pens and pencils | 2.06 |
| Telephone expense | 7.34 | Pads | 1.78 |
| Electric mimeograph | 135.00 | | |

In his notice of deficiency respondent disallowed all of the business expense deduction claimed by petitioner except for an amount of $6.50, which was determined to be an unreimbursed expense paid by petitioner in the course of his work for the Georgia Highway Department.

[2] Given the mileage petitioner listed for each of his trips, he improperly computed the total mileage which should have been 6587.5 miles or $658.75 for the claimed expense. Petitioner failed to add the meal expense he itemized into the claimed business deduction and improperly computed the total expense he incurred for the miscellaneous items he listed. According to his itemized list, petitioner should have claimed a deduction of $1,013.76.

Petitioner also claimed a $2.80 deduction for automobile expenses incurred by visits to his broker, but that amount did not arise as an incident of his lobbying activities and no evidence was offered with respect thereto.

Section 162(a) of the Internal Revenue Code of 1954 [3] provides for the deduction of ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The Revenue Act of 1962, Pub. L. 87–834, 1962–3 C.B. 123, amended section 162 by adding a new subsection (e) which provides:

(e) APPEARANCES, ETC., WITH RESPECT TO LEGISLATION.—

(1) IN GENERAL.—The deduction allowed by subsection (a) shall include all the ordinary and necessary expenses (including, but not limited to, traveling expenses described in subsection (a)(2) and the cost of preparing testimony) paid or incurred during the taxable year in carrying on any trade or business—

(A) in direct connection with appearances before, submission of statements to, or sending communications to, the committees, or individual members, of Congress or of any legislative body of a State, a possession of the United States, or a political subdivision of any of the foregoing with respect to legislation or proposed legislation of direct interest to the taxpayer, or

(B) in direct connection with communication of information between the taxpayer and an organization of which he is a member with respect to legislation or proposed legislation of direct interest to the taxpayer and to such organization,

and that portion of the dues so paid or incurred with respect to any organization of which the taxpayer is a member which is attributable to the expenses of the activities described in subparagraphs (A) and (B) carried on by such organization.

(2) LIMITATION.—The provisions of paragraph (1) shall not be construed as allowing the deduction of any amount paid or incurred (whether by way of contribution, gift, or otherwise)—

(A) for participation in, or intervention in, any political campaign on behalf of any candidate for public office, or

(B) in connection with any attempt to influence the general public, or segments thereof, with respect to legislative matters, elections, or referendums.

It is this subsection which governs the sole issue herein.

Respondent argues the expenses incurred by petitioner in the course of his lobbying activities are not deductible under section 162(e) for two reasons. Respondent alleges, first, petitioner has failed to establish the amount of the expenditures that he claims as deductions, and second, the expenses, even if substantiated, were GHEA's, not his, and thus not deductible by him as ordinary and necessary business expenses.

From our research we conclude that the deductibility of petitioner's lobbying expenses under section 162(e) is an issue of first impression. Prior to 1962 no section of the Code dealt specifically with the deductibility of lobbying expenses, but a long line of case law precluded amounts expended for lobbying purposes, for promotion or defeat of legislation, for political or campaign purposes, or for carrying on

---

[3] All references are to the Internal Revenue Code of 1954, as amended, unless designated otherwise.

propaganda, including advertising, related to any of the foregoing activities, from being deductible from gross income, either as business expenses or contributions. *Cammarano* v. *United States*, 358 U.S. 498 (1959); *Textile Mills Securities Corp.* v. *Commissioner*, 314 U.S. 326 (1941); *Connecticut Light & Power Co.* v. *United States*, 368 F. 2d 233 (Ct. Cl. 1966); *Denver & Rio Grande Western Railroad Co.*, 38 T.C. 557 (1962); *Alex H. Washburn*, 33 T.C. 1003 (1960), affd. 283 F. 2d 839 (C.A. 8, 1960), certiorari denied 365 U.S. 844 (1961); *Thomas J. Barkett*, 31 T.C. 1126 (1959); *Herbert Davis*, 26 T.C. 49 (1956). See also Rev. Rul. 61–177, 1961–2 C.B. 117, and 4A Mertens, Law of Federal Income Taxation, Sec. 25.135, p. 603. However, with the Revenue Act of 1962, Congress took cognizance of the administrative rules and judicial decisions denying the deductibility of lobbying expenses and found them to be undesirably restrictive on policy grounds. As a result, it enacted the provisions of section 162(e). Sec. 3, Pub. L. 87–834, 87th Cong., 2d Sess. (H.R. 10650).

There were four principal shortcomings in the pre-1962 law which Congress sought to remedy with the enactment of section 162(e). It was intended that the new provisions would allow deductions for expenses incurred for appearances before and communications with legislative bodies or legislators, just as such expenses incurred for appearances before and communications with administrative and judicial officers were then deductible if they otherwise qualified as trade or business expenses. Furthermore, it was felt that denial of such deductions prior to 1962 was an impediment to the presentation of information to legislative bodies, that it was unfair because it did not reflect true business income, and that its operative rules gave rise to administrative and enforcement problems. At the same time, Congress made it clear that the deduction of legislative expenses for those who incur them for personal reasons is not intended to fall within the purview of section 162(e), since personal expenses generally are not deductible with respect to administrative or judicial presentations and have no bearing on the determination of true taxable income of a business. H. Rept. No. 1447, 87th Cong., 2d Sess., p. 16; S. Rept. No. 1881, 87th Cong., 2d Sess., p. 21.

Mindful of these ideas, Congress enacted section 162(e) which allows deductions for ordinary and necessary expenses paid or incurred in direct connection with appearances before, submission of statements to, or sending of communications to specified legislative sources, with respect to legislation or proposed legislation of direct interest to the taxpayer, and expenses paid or incurred in direct connection with communication of information between the taxpayer and an organization of which the taxpayer is a member, with respect to legislation or proposed legislation of direct interest to the taxpayer and to such organization. These deductions are allowable, subject to

certain limitations not pertinent to the instant facts, if the expenses were paid or incurred during the taxable year in carrying on any trade or business.

First, we think it is clear petitioner's efforts directed to lobbying with Georgia legislators and discussing proposed legislation with GHEA members fall within the qualified activities set out in section 162(e)(1)(A) and (B). The evidence indicates that the activities in which petitioner incurred the expenses involved talking to and otherwise communicating with State legislators and officers of GHEA concerning working benefits for State highway employees.

Second, as we read the statute, there are three additional tests which petitioner must meet to be entitled to the claimed lobbying expense deductions: The expenses must have been incurred in carrying on a trade or business, they must be ordinary and necessary, and they must concern legislation of sufficient direct interest to petitioner. We deal with each test separately.

Petitioner's trade or business is being an employee of the Georgia Highway Department. *David J. Primuth*, 54 T.C. 374 (1970); cf. *United States* v. *Generes*, 405 U.S. 93 (1972). The record shows petitioner's lobbying activities were directed to establishing a grievance committee for the employees of the Georgia Highway Department, to obtaining the benefits of the State Merit System for them, and to raising their wages. Consequently, we think petitioner's lobbying activities, realistically speaking, were efforts to secure his position in his trade or business and to increase his income therefrom. Such activities are clearly within the realm of petitioner's trade or business, and the expenses attendant thereto are thus incurred in his trade or business. Cf. *David J. Primuth, supra; Guy R. Motto*, 54 T.C. 558 (1970); *Kenneth R. Kenfield*, 54 T.C. 1197 (1970); *Leonard F. Cremona*, 58 T.C. 219 (1972). We do not believe that Congress had in mind expenses of the nature herein when it specifically stated in the committee reports that lobbying expenses of a personal nature would not be deductible.

Respondent argues that the business of lobbying for the benefit of employees of the Georgia Highway Department was that of GHEA and that petitioner's expenses were incurred in conducting the business of GHEA and not his own business, and are, therefore, not deductible by him, citing *Columbian Rope Co.*, 42 T.C. 800 (1964), and *William C. Stolk*, 40 T.C. 345 (1963), affirmed per curiam 326 F. 2d 760 (C.A. 2, 1964), among other cases. We recognize that those cases stand for the general principle that a taxpayer may not assume the deductions of another by the simple expedient of payment; but the circumstances in those cases were quite different from the circumstances here. In *Columbian Rope Co.*, the taxpayers sought to deduct the salaries of employees of another company. In *Stolk* a corporate executive

sought to deduct entertainment expenses which he thought would promote the goodwill and business of his corporate employer. Here petitioner and GHEA were both engaged in promoting the welfare of the employees of the Georgia Highway Department, and incidentally petitioner's business, through lobbying activities. Petitioner's activities were not limited to doing work for or through GHEA. In fact GHEA does not appear to have been sufficiently organized during 1968 to perform the function for which it was created. We find petitioner's expenses to have been incurred in connection with his own business of being a highway employee.

Furthermore, section 162(e)(1)(B) specifically provides for the deduction of expenses incurred in direct connection with communication of information between a taxpayer and an organization of which he is a member with respect to legislation of direct interest to the taxpayer and to such organization.

Under the circumstances before us, we think the expenses also meet the second test of being "ordinary and necessary" when those words are given their commonly accepted meaning. *Commissioner* v. *Heininger*, 320 U.S. 467 (1943). They were ordinary in the sense that they are the type expenses that would normally be incurred in lobbying to promote one's business interests. Nor can they be said to be unusual. While it may not be standard practice for employees to lobby individually for the benefit of themselves and those similarly situated, many do through one approach or another, which we think was recognized by Congress in enacting section 162(e). The specific provisions of section 162(e) allow individuals to deduct that portion of their dues to unions and other organizations engaging in qualified lobbying activities. When petitioner started this activity and during the year here involved, he had no one else to whom he could turn to do the job for him. Thus petitioner was left to his own devices to gain the benefits he sought. We think it would be inequitable to discriminate against him for attempting to solve his own problems. The expenses also seem reasonable in amount for the benefits petitioner was seeking and for the work he did in support of his project.

Finally, the record established beyond any doubt that petitioner and GHEA had a direct interest in the enactment of the desired legislation. Respondent's regulations spell out in detail the requisite direct interest necessary to comply with section 162(e):

(b) *Direct interest*—(1) *In general.* (i) Legislation or proposed legislation is of direct interest to a taxpayer if the legislation or proposed legislation is of such a nature that it will, or may reasonably be expected to, affect the trade or business of the taxpayer. It is immaterial whether the effect, or expected effect, on the trade or business will be beneficial or detrimental to the trade or business or whether it will be immediate. If legislation or proposed legislation has such a relationship to a trade or business that the expenses of any appearance or communication in connection with the legislation meets the ordinary and neces-

sary test of section 162(a), then such legislation ordinarily meets the direct interest test of section 162(e). However, if the nature of the legislation or proposed legislation is such that the likelihood of its having an effect on the trade or business of the taxpayer is remote or speculative, the legislation or proposed legislation is not of direct interest to the taxpayer. Legislation or proposed legislation which will not affect the trade or business of the taxpayer is not of direct interest to the taxpayer even though such legislation will affect the personal, living, or family activities or expenses of the taxpayer. Legislation or proposed legislation is not of direct interest to a taxpayer merely because it may affect business in general; however, if the legislation or proposed legislation will, or may reasonably be expected to, affect the taxpayer's trade or business it will be . of direct interest to the taxpayer even though it also will affect the trade or business of other taxpayers or business in general. To meet the direct interest test, it is not necessary that all provisions of the legislation or proposed legislation have an effect, or expected effect, on the taxpayer's trade or business. The test will be met if one of the provisions of the legislation has the specified effect. Legislation or proposed legislation will be considered to be of direct interest to a membership organization if it is of direct interest to the organization, as such, or if it is of direct interest to one or more of its members.

(ii) Legislation which would increase or decrease the taxes applicable to the trade or business, increase or decrease the operating costs or earnings of the trade or business, or increase or decrease the administrative burdens connected with the trade or business meets the direct interest test. Legislation which would increase the social security benefits or liberalize the right to such benefits meets the direct interest test because such changes in the social security benefits may reasonably be expected to affect the retirement benefits which the employer will be asked to provide his employees or to increase his taxes. Legislation which would impose a retailer's sales tax is of direct interest to a retailer because, although the tax may be passed on to his customers, collection of the tax will impose additional burdens on the retailer, and because the increased cost of his products to the consumer may reduce the demand for them. Legislation which would provide an income tax credit or exclusion for shareholders is of direct interest to a corporation, because those tax benefits may increase the sources of capital available to the coropration. Legislation which would favorably or adversely affect the business of a competitor so as to affect the taxpayer's competitive position is of direct interest to the taxpayer. Legislation which would improve the school system of a community is of direct interest to a membership organization comprised of employers in the community because the improved school system is likely to make the community more attractive to prospective employees of such employers. On the other hand, proposed legislation relating to Presidential succession in the event of the death of the President has only a remote and speculative effect on any trade or business and therefore does not meet the direct interest test. Similarly, if a corporation is represented before a congressional committee to oppose an appropriation bill merely because of a desire to bring increased Government economy with the hope that such economy will eventually cause a reduction in the Federal income tax, the legislation does not meet the direct interest test because any effect it may have upon the corporation's trade or business is highly speculative.

See sec. 1.162–20(c)(2)(ii)(b), Income Tax Regs. It cannot be disputed that petitioner's interest in the legislation he proposed comports with the guidelines set out in the regulations. No legislation could more directly affect petitioner's trade or business than that aimed

at improving his working conditions and increasing his wages. And, the fact that others in the same trade or business benefited from petitioner's efforts is of no consequence.

Respondent also contends that petitioner has failed to substantiate any of the expenses he incurred with respect to his lobbying activities. We disagree to a certain extent. We think the record amply supports petitioner's claimed deductions of $7.34 for telephone, $9.84 for mimeograph ink, $66 for postage, and $3.84 for pads and pencils. Petitioner admitted that $3 of the postage claimed was personal. The cost of the electric mimeograph machine was for a capital asset and is not deductible; and we have no evidence upon which to arrive at a depreciation deduction. Petitioner did not claim a deduction for the meals listed on his return, and there is no evidence upon which we can determine whether petitioner is entitled to a deduction for meals.

The larger part of the claimed expenses were for traveling in connection with petitioner's lobbying activities. Section 274(d)[4] provides that no deduction shall be allowed under section 162 for any traveling expenses unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement the amount of such expenses, the time and place of the travel, and the business purpose of the expense. Regulation 1.274–5 lays down rules for substantiation of travel and entertainment expenses which are more stringent than the substantiation required for other types of deductions. Generally, these rules require the taxpayer to maintain an account book, a diary, statement of expense, or similar record, and documentary evidence which in combination are sufficient to establish each element of the expenditure and its business purpose. The rules require that the account book, diary, statement of expense, or similar record be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure.

Petitioner attached to his 1968 tax return an itemized list of the trips he took to various places in Georgia in connection with his lobbying activities and the distance traveled on those trips. He computed the deductible expenses of these trips at 10 cents per mile. At the trial he testified generally with respect to the purpose for these trips and specifically with reference to whom he went to see and what he did on many of the trips. Petitioner also offered in evidence three pages taken from a diary or memorandum book on which were listed various trips taken and indicating the destination, the date, and the mileage traveled. Attached to this were two pages taken from a similar record listing the individuals he talked to on the dates indicated. It is not entirely clear just when these entries were made in the memorandum

---

[4] The committee reports referred to above specifically recognize that the limitations on deductions for travel and entertainment provided in sec. 274 apply with respect to lobbying expenses.

book, but we are satisfied from the evidence that they were made reasonably close to the time the trips were taken. Petitioner testified that the travel expenses claimed on his return were based primarily on the entries reflected on those sheets taken from the memorandum book.

We believe the proof offered by petitioner, while not the best, sufficiently meets the requirements of the law and regulations to allow petitioner deductions for travel expenses to the extent the records support the itemized expenses claimed on his return. We have analyzed and compared the various records submitted by petitioner and his oral testimony and, without going into details of the computation, have found that petitioner has adequately substantiated that he traveled a total of 5,449.3 miles in connection with his lobbying activities in 1968 and is entitled to a deduction of $544.93 for travel expenses.

Summarizing the expenses which we conclude petitioner may deduct, they are:

| | |
|---|---:|
| Travel | $544.93 |
| Telephone | 7.34 |
| Ink | 9.84 |
| Postage | 66.00 |
| Pads and pencils | 3.84 |
| Total | 631.95 |

*Decision will be entered under Rule 50.*