Robert J. GEARY, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 99–70571.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 30, 2000.

Filed Dec. 27, 2000.

Robert L. Goldstein, Law Offices of Stephen M. Moskowitz, LLP, San Francisco, California, for the appellant.

Loretta C. Argrett, Assistant Attorney General, Teresa E. McLaughlin, Michelle C. France (argued), Tax Division, U.S. De-

1. Judge Tallman was recused.

partment of Justice, Washington, D.C., for the appellee.

Before: B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a taxpayer is entitled to an income tax deduction for expenses incurred to place a proposition affecting his working conditions on a local ballot.

## I

Robert Geary, a veteran officer of the San Francisco Police Department, appeals a judgment from the Tax Court upholding the Commissioner's determination of a deficiency in his income tax for the 1993 tax year and an assessment of an accuracy-related penalty. The Tax Court disallowed Geary's claimed deduction of $9,711.49 in purported "business expenses" incurred under the following circumstances.

In response to a 1992 San Francisco Police Department policy to encourage creative community policing strategies, Geary began patrolling his beat with a ventriloquist's dummy, whom he named Officer Brendan O'Smarty ("the dummy" or "Officer O'Smarty"). Geary patrolled San Francisco's ethnically diverse North Beach neighborhood and used the dummy to assist him in breaking down language and cultural barriers with neighborhood residents. Geary's unusual approach to community policing attracted national and international media attention, from Turkish television coverage to the front page of the New York Times. Geary realized income as a result of this media attention. Geary signed an option contract with Golden Door Productions to develop a story concept for a film and received over $14,000 when his concept was sold to Interscope Communications. Geary also earned income as a hand model.

When Geary's supervisors became aware of his community policing technique, they told him to "[g]et rid of the puppet because it makes the department look stupid." Geary protested and insisted on meeting with department officials about Officer O'Smarty. At the meeting, it was decided that Geary would need prior written departmental approval before taking Officer O'Smarty on future patrols. The plight of Officer O'Smarty stirred the San Francisco Board of Supervisors to pass a resolution urging the mayor to instruct the chief of police to allow Geary to continue patrolling with the dummy. The mayor resisted the Board's entreaty and the resolution was ignored.

At this point, it occurred to Geary that he should let the San Francisco voters decide whether he should be permitted to use the dummy as he saw fit. He formed the Committee to Save Puppet Officer Brendan O'Smarty and circulated a petition to place the issue before the voters. As required by California law, the San Francisco City Attorney certified that the ballot title appearing on the petition was "presented as a true and impartial statement of the proposed measure." The proposed text of the declaration of policy as it appeared on the petition recited that the measure would allow Geary to decide when to team up with Officer O'Smarty in order "to develop greater trust between the community and the Police Department, improve communications between the department and the general public, and help remove barriers which hamper the goals of the department."

Geary secured sufficient signatures to place the measure on the ballot as "Proposition BB" and the public approved the proposition the following November. Geary incurred $11,465 in petition circulation and promotion expenses and deducted this amount from his 1993 income taxes as

Schedule C advertising expenses. Of this amount, Geary paid $9,088.60 to a professional petition signature collector to obtain the nearly 10,000 signatures required for his proposition to be placed on the ballot. Geary paid an additional $622.89 in connection with the circulation of the ballot petition for a total of $9,711.49 in expenses related to the circulation of the petition and collection of signatures. The remaining $1,753.51 was spent for slate card mailings, paid argument in the ballot pamphlet, and other expenses designed to promote the proposition.

The IRS disallowed Geary's entire Schedule C deduction, issued a notice of deficiency in the amount of $3,499, and assessed an accuracy-related penalty under 26 U.S.C. § 6662(a) and (b)(1) in the amount of $700. Geary petitioned for a redetermination of the deficiency and penalty in Tax Court. He contended that these expenses were "ordinary and necessary expenses" of his business, or in the alternative, unreimbursed employee business expenses, and hence deductible under 26 U.S.C. § 162(a). Geary was the sole witness to testify at trial. On April 5, 1999, the Tax Court entered judgment for the Commissioner, holding that such expenses were non-deductible under 26 U.S.C. § 162(e)(2)(B), which disallows business deductions for expenses incurred "in connection with any attempt to influence the general public, or segments thereof, with respect to elections, legislative matters, or referendums." 26 U.S.C. § 162(e)(2)(B) (1992). The court rejected Geary's contention that his primary purpose in placing the measure on the ballot was to inform the voters of his creative community policing efforts and to let them decide whether he should continue to patrol with Officer O'Smarty. The court concluded that "[t]aken as a whole, petitioner's actions show a clear intent to influence the general public." The court also determined that Geary was subject to an accuracy-related penalty under 26 U.S.C. § 6662(b)(1) because he negligently claimed a deduction for such expenses.

On appeal, Geary claims that the Tax Court erred in characterizing his effort to place his puppet proposition on the ballot as an attempt to influence the public. He insists that he merely wished to inform the voters in neutral terms about the issue and let them decide for themselves. Geary has conceded that $1,753.51 of his total claimed advertising deduction, not related to petition circulation or signature collection, was incurred in an attempt to influence the public. Thus, only the $9,711.49 in petition-related expenses are at issue in this appeal.

II

Since 1918, regulations promulgated by the Treasury have provided that expenses incurred for the promotion or defeat of legislation are not deductible as business expenses. See Cammarano v. United States, 358 U.S. 498, 502–03, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959). In Cammarano, the Supreme Court held that these regulations applied equally to referenda; hence, expenses incurred by liquor retailers and distributors in an effort to encourage voters to vote against a state prohibition initiative were not deductible as ordinary and necessary business expenses. Id. at 505–12, 79 S.Ct. 524. In the Revenue Act of 1962, Congress codified this portion of the Cammarano decision, adding § 162(e) to the Internal Revenue Code.[1] Revenue Act of 1962, Pub.L. 87–834 § 3(a). Section 162(e)(2)(B) provided that there would be no deduction for "any amount paid or incurred ... in connection with any attempt to influence the general public, or segments thereof, with respect to elections, legislative matters, or referendums." 26

1. The Revenue Act of 1962 also created a limited deduction for certain lobbying activities not relevant here.

U.S.C. § 162(e)(2)(B).[2] This provision was meant to disallow deductions "for expenses incurred in connection with what is usually called 'grassroot' campaigns intended to develop a point of view among the public generally...." Senate Report No. 87–1881, 1962 U.S.C.C.A.N. 3297, 3326.

Geary contends that his petition circulation and signature collection expenses were not incurred in an attempt to "influence the public" under § 162(e)(2)(B). He insists that his efforts to place Proposition BB on the ballot were borne solely from a desire to inform the public about the police puppet issue and to let the voters decide whether he should continue to patrol with Officer O'Smarty. He relies heavily on the fact that the San Francisco City Attorney certified that the ballot title appearing on the ballot petition was a "true and impartial statement of the purpose of the proposed measure." He also insists that the signature collectors did not tell anyone to vote for or against the measure.

█ We disagree. The plain language of § 162(e)(2)(B) renders non-deductible "*any* amount paid or incurred ... *in connection with* any attempt to influence the general public...." 26 U.S.C. § 162(e)(2)(B) (emphasis added). The expenses at issue here were clearly "in connection with" Geary's attempt to influence the public with respect to the puppet proposition. The circulation of the petition and collection of signatures were necessary first steps in Geary's overall promotion of the proposition.

In *Washburn v. Commissioner*, 283 F.2d 839 (8th Cir.1960), the Eighth Circuit squarely rejected arguments virtually identical to Geary's. In *Washburn*, the taxpayer claimed a deduction for signature collection expenses he incurred in an effort to place a referendum on the ballot that would repeal a certain legislative act. *Id.* at 840. The taxpayer claimed that he did not incur these expenses in order to influ-

ence the public, but merely to place the referendum on the ballot. The court rejected this argument:

> The facts in the instant case come within the purview of *Strauss*[3] and *Cammarano*. Here the taxpayer expended money for the purpose of obtaining sufficient signatures to make possible the referendum of an existing state statute to the people under the same state constitutional provision involved in *Strauss*.... The taxpayer here argues that he expended these funds only for the purpose of securing signatures to make possible the referendum, and not for the promotion or defeat of legislation. But obviously he was doing it for the purpose of annulling the existing legislation. Having found this purpose as a fact, the Tax Court necessarily held the expenditures non-deductible under the specific provisions of the Treasury Regulations.

*Id.* at 843.

Here, too, the Tax Court found that Geary incurred the petition circulation and signature collection expenses for the purpose of influencing the public. This finding is not clearly erroneous. Geary began his efforts to place Proposition BB on the ballot in response to the police department's restrictions on his use of Officer O'Smarty. He paid for the expenses at issue through his "Committee to Save Puppet Officer Brendan O'Smarty," which he formed, according to his own testimony, for the express purpose of getting the proposition passed. The petition he circulated contained the text of the proposed declaration of policy in addition to a "true and impartial" ballot title certified by the City Attorney as required by the California Election Code. After securing Proposition BB's place on the ballot, Geary incurred additional expenses to promote the measure and to ensure its passage. Thus, there can be little doubt that Geary in-

---

2. Section 162(e)(2)(B) was renumbered as § 162(e)(1)(C) in 1996.

3. *Strauss* was a companion case to *Cammarano*.

curred the disputed petition circulation expenses in connection with—and, in fact, as an integral part of—his overall attempt to persuade the public.[4]

In the words of Judge Learned Hand, "[p]olitical agitation as such is outside the statute, however innocent the aim.... Controversies of that sort must be conducted without public subvention; the Treasury stands aside from them." *Slee v. Commissioner*, 42 F.2d 184, 185 (2d Cir. 1930) *quoted in Cammarano*, 358 U.S. at 512, 79 S.Ct. 524. Accordingly, we reject Geary's attempt to receive "public subvention" for his campaign on behalf of Officer O'Smarty.

### III

26 U.S.C. § 6662(a) provides for an accuracy-related penalty equal to 20 percent of any underpayment attributable to, among other things, "negligence or disregard of rules or regulations." 26 U.S.C. § 6662(b)(1). The Tax Court upheld the Commissioner's assessment of a penalty against Geary pursuant to this section.

■ 26 U.S.C. § 6664(c)(1) provides that no penalty shall be imposed under § 6662 "if it is shown that there was a reasonable cause for such [underpayment] and that the taxpayer acted in good faith...." 26 U.S.C. § 6664(c)(1). According to the Treasury regulations, "[c]ircumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."

26 C.F.R. § 1.6664–4(b)(1). Given the unusual facts of this case, Geary's relative lack of experience, and the absence of case law on point from this circuit, we conclude that Geary's underpayment was not attributable to negligence but rather amounted to no more than an honest misunderstanding of law that was reasonable in light of all the facts and circumstances. *See Stanford v. Commissioner*, 152 F.3d 450, 460–61 (5th Cir.1998) (vacating penalty where taxpayer's underpayment was reasonable under the circumstances). We accordingly reverse the Tax Court's affirmance of Geary's accuracy-related penalty.

### IV

For the foregoing reasons, the judgment of the Tax Court is AFFIRMED in part and REVERSED in part. No costs to either party.

---

4. For the same reason, Geary's reliance on 26 C.F.R. § 1.162–20(c)(3) is also unavailing. Section 1.162–20(c)(3) provides:

> If a substantial part of the activities of an organization, such as a labor union or a trade association, consists of one or more of the activities to which this paragraph relates (legislative matters, political campaigns, etc.), ... a deduction will be allowed only for such portion of the dues or other payments to the organization as the taxpayer can clearly establish is attributable to activities to which this paragraph does not relate....

26 C.F.R. § 1.162–20(c)(3). Geary insists that his contributions to the Committee to Save Puppet Officer Brendan O'Smarty are deductible under this regulation to the extent that they were used for the "neutral" activities of petition circulation and signature collection, notwithstanding the fact that non-deductible promotional expenses were subsequently incurred. As we have explained, Geary's petition circulation and signature collection expenses were incurred in connection with Geary's attempt to influence the public and are therefore independently non-deductible.